**In re Herbert Lester YARDLEY, Debtor.**

**MADISONVIEW TOWERS, Plaintiff,**

v.

**Herbert Lester YARDLEY, Defendant.**

**Bankruptcy No. 386–05453.**
**Adv. No. 387–0015.**

United States Bankruptcy Court,
M.D. Tennessee.

Sept. 16, 1987.

Kathryn Calhoon, Legal Services of Middle Tennessee, Inc., Nashville, Tenn., for Herbert Yardley.

Keene W. Bartley, Schulman Leroy & Bennett, P.C., Nashville, Tenn., for Madisonview Towers.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

Before filing this Chapter 13 case, the debtor breached a residential lease provision regulating the personal conduct of tenants. That non-monetary default is curable under 11 U.S.C. § 365(b)(1) and the debtor has offered adequate assurance of future performance of the lease.

The following constitute findings of fact and conclusions of law. Bankr.R. 7052. This is a core proceeding. 28 U.S.C. §§ 157(b)(2)(A), (L), (M) (Supp. II 1984).

### I.

Debtor leases an apartment from Madisonview Towers ("Madisonview"), a Section 8 subsidized apartment complex.[1] On November 11, 1986, debtor had an altercation with a Madisonview security guard. The incident began with a reprimand for carrying a lighted cigarette through a lobby area. Some vulgar language was exchanged and the debtor brandished a pocket knife. The security guard hit the debtor with a billy club. Debtor was eventually convicted of criminal assault and fined by the General Sessions Court for Davidson County, Tennessee.

On November 12, 1986 Madisonview sent debtor a 30-day notice to vacate the apartment. Madisonview claimed debtor violated § 7 and § 31 of the Rules and Regulations Governing Occupancy:

§ 7. Firearms, fireworks, beebee guns, or sling shots will not be allowed on the premises under any circumstances by residents or their guests.

§ 31. Profane, obscene, loud or boisterous language or unseemly behavior and conduct is absolutely prohibited.

On December 18, 1986, debtor filed a Chapter 13 petition. In his plan, debtor proposed to assume the Madisonview lease. Madisonview objects on three grounds: (1)

Upon default, the lease expired and is no longer assumable; (2) a non-monetary default cannot be cured under 11 U.S.C. § 365; and (3) even if the lease is assumable and the non-monetary default can be cured, the debtor has not offered adequate assurance of future performance.

### II.

▪ Whether a residential lease is unexpired and eligible for assumption under § 365 was recently addressed by this court in *Gallatin Housing Authority v. Talley (In re Talley)*, 69 B.R. 219 (Bankr.M.D. Tenn.1986). Applying Tennessee law, *Talley* concludes that a residential lease remains unexpired for purposes of § 365 until a writ of possession is served on the debtor:

Only then—upon execution of the Writ of Possession—is the termination of the landlord tenant relationship 'measurable [and] identifiable.' Prior to that time, the tenant has many and varied rights to upset the landlord's intent to reacquire the leasehold. Execution of a Writ of Possession is the one step in the process that has certainty in all counties and in all contractual situations. It is the point in time at which the process of the law physically severs the debtor from the tenancy. For purposes of application of a Chapter 13 debtor's right to cure default and maintain payments under a residential lease, I find that the lease is not 'expired' until execution of the Writ of Possession by service upon the tenant.

*Id.* at 225.

This debtor was in lawful possession of the apartment at the petition. There is no evidence that debtor was served with a Writ of Possession prior to filing or that any preliminary process for unlawful detainer had been accomplished. The lease was unexpired for purposes of 11 U.S.C. § 365.

### III.

▪ Madisonview's argument that "non-monetary" defaults cannot be cured under

---

1. *See* description of Section 8 Rental Assistance Program in *Dellway Villa Apartments v. Goodloe* *(In re Goodloe)*, 61 B.R. 1016, 1017 n. 1 (Bankr. M.D.Tenn.1986).

§ 365 is refuted by the Code and has never been embraced by any reported decision interpreting § 365.

On the face of the statute, Congress contemplated that non-monetary defaults would be curable under § 365. Section 365(b)(1) begins with a general power to assume or reject an executory contract or unexpired lease. "If there has been a default," the trustee cannot assume the contract or lease without curing "such default" or providing adequate assurance of a prompt cure. There are no words of limitation indicating that the nature of the prepetition default restricts the general power to assume or reject. Elsewhere in § 365, Congress identifies for special treatment many specific non-monetary defaults.

For example, under § 365(b)(2), the trustee need not cure a default that relates to insolvency, financial condition, the commencement of a case under the Bankruptcy Code, the appointment of a receiver, trustee or custodian, etc. The events described in § 365(b)(2) are non-monetary provisions of a contract or lease which need not be cured to accomplish assumption under § 365(b)(1). If Congress intended that non-monetary defaults be incurable under § 365, it would be unnecessary if not inconsistent for Congress to exempt the laundry list of non-monetary defaults in § 365(b)(2). See In re Grayhall Resources, Inc., 63 B.R. 382 (Bankr.D.Colo.1986); In re Haute Cuisine, Inc., 58 B.R. 390 (Bankr.M.D.Fla. 1986); In re Bon Ton Restaurant and Pastry Shop, Inc., 53 B.R. 789 (Bankr.N.D. Ill.1985); In re Luce Industries, Inc., 8 B.R. 100, 7 Bankr.Ct.Dec. (CRR) 78 (Bankr. S.D.N.Y.1980).

Section 365(b)(3) addresses adequate assurance of future performance of the *monetary* provisions of a shopping center lease requiring that the financial condition "of the source of rent and other consideration due under such lease" be similar to the financial condition of the debtor and its guarantors. Congress obviously knew how to talk about monetary defaults when it so intended. In contrast, Section 365(b)(3)(C) discusses non-monetary provisions that might be contained in a shopping center lease which must be respected upon assumption or assignment. It is implicit in the structure of § 365 that Congress contemplated the curing of non-monetary defaults.

Almost every lease contains provisions that are not monetary or compensatory. Provisions relating to use, access, behavior, etc., require action or repose of the tenant other than the payment of rents. A power to cure only monetary defaults would be of little practical utility. That the Bankruptcy Code permits cure of monetary and non-monetary defaults gives content to the power to assume unexpired leases and executory contracts in bankruptcy cases.

■ It is not beyond the power to cure that a prepetition default may also constitute a crime under state law. Congressional intent to make exception to a power based on the criminal content of a prepetition act is found elsewhere in the Bankruptcy Code. For example, 11 U.S.C. § 362(b)(1) excepts from the operation of the automatic stay "the commencement or continuation of a criminal action or proceeding against the debtor." There is no exception to the power to cure defaults in a lease indicating Congressional intent to prohibit the curing of defaults that also have criminal content.

■ Many events that constitute lease defaults may have criminal implications. In Tennessee a tenant who remains on leased property after a court order for unlawful detainer may be charged with criminal trespass. See TENN.CODE ANN. § 39–3–1201 (1982 Supp.). A tenant who destroys or defaces leased property may be prosecuted for malicious destruction of property under TENN.CODE ANN. § 39–3–1325 (1982). Nowhere does the Bankruptcy Code indicate that the potential for criminal prosecution arising from the breach of an unexpired lease or executory contract interrupts the right to cure that default.

Congress has imposed other punishments in bankruptcy for debtors who engaged in prepetition criminal conduct. As mentioned above, the debtor remains subject to prosecution. If a prepetition criminal act

gives rise to claims in the bankruptcy case, those claims may be excepted from discharge under 11 U.S.C. § 523. Congress did not render lease forfeiture in bankruptcy an automatic consequence of prepetition misconduct.

It is not possible for this debtor to undo the altercation with the guard. However, the debtor was criminally prosecuted. The debtor was fined $25 in the state criminal court and paid his fine. No party has suggested that anything more can be done by the debtor to cure this default. The cure requirement of § 365(b)(1)(A) has been satisfied.

## IV.

 "The terms, 'adequate assurance of future performance' are not words of art; ... they were intended to be given a practical pragmatic construction. The determination ... revolves around the nature of the parties involved, their prior dealings, the present contract and what solution is truly 'equitable' given the composition of the mix of facts." *In re Luce Industries, Inc.,* 8 B.R. 100, 107, 7 Bankr.Ct.Dec. (CRR) 78, 81 (Bankr.S.D.N.Y.1980). "What constitutes adequate assurance is a factual question to be determined on a case-by-case basis with due regard to the nature to the parties, their past dealings and present commercial realities." *In re General Oil Distributors, Inc.,* 18 B.R. 654, 658, 8 Bankr.Ct.Dec. (CRR) 1174, 1176 (Bankr.E.D.N.Y.1982); *Chera v. 991 Boulevard Realty Corp. (In re National Shoes, Inc.),* 20 B.R. 55, 9 Bankr.Ct.Dec. (CRR) 11, 14 (Bankr.S.D.N.Y.1982). "[T]he required assurance will fall considerably short of an absolute guarantee of performance." *In re Bon Ton Restaurant and Pastry Shop, Inc.,* 53 B.R. 789, 803 (Bankr.N.D.Ill.1985).

Debtor is 66 years old. He lived at Madisonview for eight years without incident and has friends and other attachments, including his church, in the neighborhood. It is stipulated that the debtor has been careful not to have a lighted cigarette in the lobby area. Debtor no longer carries a pocket knife and has stopped speaking to the security guard. It is stipulated that

the debtor intends to perform his future obligations under the lease and should he be forced to move, alternative public housing is not immediately available. As a showing of intent to honor his promise to avoid future confrontations, debtor submitted evidence that he has lived up to other promises. Adequate assurance of future performance is present.

An appropriate order will be entered.