**In re Barbara LIGGINS, Debtor.**

**Bankruptcy No. 91–26976–T.**

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Sept. 23, 1992.

Thelma Y. Carroll, Tidewater Legal Aid Soc., Norfolk, Va., for debtor.

Eric W. Schwartz, John R. Sloan, Mays & Valentine, Norfolk, Va., for Berkley Ltd. Partnership.

David R. Levin, Chapter 13 Trustee, Portsmouth, Va.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

In this chapter 13 case, the trustee and the debtor's landlord, an unsecured creditor, object to confirmation of debtor's proposed plan. The court has considered argument at two hearings and memoranda of law submitted by counsel.

For reasons stated in this opinion, confirmation of the plan will be denied.[1]

### Facts

The debtor filed a chapter 13 petition on December 9, 1991. Her proposed plan, which is on the printed form required by local rules of this district, was filed on December 24, 1991.

The plan states that debtor has total unsecured debt of $13,092.00 and secured debt of $2,810.00. The plan provides for the debtor to pay to the trustee the sum of $260.00 per month for at least 36 months and up to 60 months depending upon contingencies stated in the plan.

Berkley Limited Partnership is debtor's residential landlord under subsidized housing provided under 42 U.S.C. § 1437f. Berkley has filed an unsecured, nonpriority claim for prepetition delinquent rent in the amount of $8,769.00. The debtor's payment proposal for Berkley is contained under the plan form heading for creditors secured by property other than real estate and whose claims are to be paid in full through the trustee. It is stated in the plan that Berkley's balance due is $9,176.00[2] and that the collateral securing the claim is "past due rent for federally subsidized apartment". The pertinent payment provisions for Berkley are as follows:

Lien to otherwise be satisfied by: $80.00 per month to be paid for 36 months. Thereafter, approximately, $230.00 shall be paid, by Trustee, to this creditor for an additional 12 months. Creditor rationally distinguished from other unsecured creditor as payment for ongoing shelter necessity for debtor and children. Note, if competent evidence proves a further amount owed, payments will continue for an additional 11 months with debtor making lump sum payments in additional to

---

1. Since the court advised the trustee and counsel that confirmation of the present plan is being denied, new counsel for debtor has advised the court that a modified plan will be filed.

2. Debtor's petition schedules Berkley as an unsecured, nonpriority creditor with a balance of $9,176.00 followed by this statement: "debtor, unless otherwise shown, admits $5,640.00 without prejudice."

12th payment for any money owed. (Page 3A)

Thus the maximum payment to Berkley would be $8,170.00, which is less than the scheduled debt and less than Berkley's claim.

Under the plan form heading for executory contracts to be assumed by debtor, the plan provides for assumption of the Berkley subsidized apartment lease.

Other provisions of debtor's plan call for the trustee to pay claims secured by furniture, appliances and an automobile; a $2,100.00 unsecured education loan debt is to be paid in full, the debtor's remaining unsecured debt (approximate total amount, $1,816.00) is to be paid an estimated one percent.

### Objections to Debtor's Plan

The chapter 13 trustee objects to confirmation of the plan because of the provision to pay all or a substantial portion of the unsecured rent claim while the general unsecured claims are to be paid virtually nothing. The trustee's position is that the plan unfairly discriminates against other unsecured creditors in contravention of 11 U.S.C. § 1322(b)(1).

Berkley's counsel filed an objection to confirmation and later a memorandum in support which responded to argument of debtor's counsel. Berkley objects to confirmation of debtor's plan on the basis that the proposed lease assumption provision of the plan fails to comply with Bankruptcy Code § 365(b)(1) in that the plan does not propose to cure Berkley's full rental delinquency, nor does the plan provide adequate assurance of a prompt cure of the delinquency. Berkley also objects to the plan's provision to pay less than the amount of its claim.

### Debtor's Position

Debtor's position on the trustee's objection may be found in the provision of the chapter 13 plan set out above to the effect that Berkley's claim is "rationally distinguishable" from other unsecured creditors as a necessity to provide shelter for debtor and children.

After Berkley's counsel filed the objection to confirmation, debtor's counsel filed two responsive memoranda. In summary, counsel argued on debtor's behalf as follows:

(1) Debtor, as a tenant in federally subsidized housing has a constitutionally protected interest in her tenancy;

(2) Berkley serves as agent of the government in administering the apartment complex, is directly paid a rent subsidy and is subject to applicable federal regulations and laws;

(3) Bankruptcy Code § 365(b)(1) is inapplicable but rather is supplanted here by the prohibition against discriminatory treatment by governmental units as provided by Code § 525;[3]

(4) Berkley is a quasi-governmental unit and therefore may not discriminate against debtor by insisting that she comply with § 365(b)(1).

(5) Aside from the above argument and notwithstanding the payment provisions of her plan, debtor has argued that she has no debt to Berkley because the landlord has been fully paid by the federal rent subsidy.

---

**3.** § 525. Protection against discriminatory treatment

(a) ... [with exceptions not here applicable], a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

11 U.S.C. § 525(a).

## Discussion And Conclusions

This case presents an unusual chapter 13 confirmation issue. For several years, the debtor has resided in privately owned housing owned by Berkley Limited Partnership. Although she is entitled to a subsidized housing allowance under 42 U.S.C. § 1437f, debtor has incurred a rental delinquency due Berkley in the approximate amount of $8,769.00 (according to Berkley's proof of claim).

In her chapter 13 plan debtor seeks to pay her delinquent rent over a period of up to 60 months; she also proposes that this payment will cure the default and permit her to assume the lease in accordance with Code § 365. The petition and plan indicate debtor disputes the amount of Berkley's claim.

This chapter 13 plan has raised two legally and philosophically diverse objections. In ruling on confirmation, I will ignore the fact that debtor's chapter 13 plan treats the landlord's claim as a secured claim when it is undisputedly an unsecured claim. However, in any modified plan, the claim should be properly described.

### (1) Trustee's Objection

The chapter 13 trustee objects to debtor's proposal to pay a substantial part if not all of the landlord's unsecured claim while paying other unsecured claims just one percent. § 1322(b)(1). This objection arises under Code § 1322(b)(1) which provides that a chapter 13 plan may "designate a class or classes of unsecured claims ... but may not discriminate unfairly against any class so designated". 11 U.S.C. § 1322(b)(1).

A number of courts have applied a four part test to discern a chapter 13 plan's unfair designation of an unsecured class of creditors.

The test is (1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination. Restating the last element, does the basis for the discrimination demand that this degree of differential treatment be imposed?

*In re Wolff,* 22 B.R. 510, 512 (9th Cir. BAP 1982). *See also Mickelson v. Leser (In re Leser),* 939 F.2d 669, 672 (8th Cir.1991); *In re Saulter,* 133 B.R. 148, 149 (Bankr. W.D.Mo.1991); *In re Bowles,* 48 B.R. 502, 506 (Bankr.E.D.Va.1985); L. King, 5 *Collier On Bankruptcy,* ¶ 1322.05[2].

There is no minimum payment requirement for unsecured debt in chapter 13 cases, and the proposed one percent payment to unsecured creditors in itself should not be a factor on the question of a debtor's good faith. See 11 U.S.C. § 1325(b); L. King, 5 *Collier On Bankruptcy,* ¶ 1325.-08[1]; *Deans v. O'Donnell (In re Deans),* 692 F.2d 968 (4th Cir.1982). Nevertheless, in this court's view, an extremely low percentage payment plan warrants close examination for other indications of bad faith. The problem becomes much more acute when the plan creates different classes of unsecured debt and proposes to pay some classes in full and little or nothing to others.[4]

The burden is on the debtor to establish that her plan does not unfairly discriminate against the class of unsecured creditors who are to receive payment of one percent. *In re Whitelock,* 122 B.R. 582, 588 (Bankr.D.Ut.1990); *In re Warner,* 115 B.R. 233 (Bankr.E.D.Calif.1989). However, the court has received no evidence to support the plan provisions for the dispa-

---

**4.** One of the important goals of the provisions in chapter 13 of the 1978 Bankruptcy Reform Act governing the adjustment of debts of an individual was to provide protection for financially troubled debtors who wanted to pay their debt but needed time to do so. I am aware that in some areas of our country, there is a tradition in chapter 13 filings to provide for substan-

tial percentage payment of all unsecured debt. I am also aware, as a former standing chapter 13 trustee, that in this district the chapter 13 plans of many debtors provide little payment to unsecured creditors while paying substantial sums that enable debtors to retain homes, automobiles and other financed consumer purchases.

rate classes of unsecured debt under any of the tests set out above.

■ There may be some merit in the debtor's statement that the landlord's claim should be subject to a different treatment due to the necessity for debtor to provide a home for herself and her family. At the least, debtor must make some evidentiary showing of the necessity for her to pay the claim in full so that she may continue to occupy this particular apartment. The critical question will be whether there is such necessity that justifies a mere token payment of other unsecured debt.

Given the state of the record, the trustee's objection to confirmation must be sustained.

■ (Although not cited by the trustee as a basis for objection to the plan, debtor's separate classification of her unsecured education loan, also to be paid in full, presents another basis for rejection of the plan. Since the 1990 Bankruptcy Code amendments, education loans are generally excepted from discharge in chapter 13 cases just as in chapter 7. 11 U.S.C. § 1328(a)(2), § 523(a)(8). Recent decisions have held that the nondischargeability of education debt does not justify a discriminatory payment classification for education debt in a chapter 13 plan. *See In re Keel*, 143 B.R. 915 (Bankr.D.Neb.1992); *In re Saulter*, 133 B.R. 148 (Bankr.W.D.Mo.1991); *In re Scheiber*, 129 B.R. 604 (Bankr.D.Minn. 1991); *In re Tucker*, 130 B.R. 71 (Bankr. S.D.Iowa 1991); *In re Cronk*, 131 B.R. 710 (Bankr.S.D.Iowa 1990).)

(2) Landlord's Objection

■ Debtor's apartment landlord Berkley objects to confirmation because the plan will allow debtor to assume the apartment lease but fails to provide for compliance with provisions of Code § 365(b)(1) which govern debtor's assumption of a lease in default. This section requires a debtor, prior to assuming a lease or executory contract, to cure the default in payment or provide adequate assurance of a prompt cure of default. 11 U.S.C. § 365(b)(1).

Section 1322(b)(7) of the Code allows a chapter 13 plan to provide for the assumption of an unexpired lease "subject to section 365" of the Bankruptcy Code. 11 U.S.C. § 1322(b)(7).

Under her plan, the debtor proposes to assume the Berkley lease and cure the default by paying at least $5,640.00 towards the prepetition rent delinquency over a 48 month period. The plan further allows for an additional amount to be paid monthly during the fifth plan year, resulting in a total potential payment of $8,170.00. This sum is approximately $1,000.00 less than the amount of Berkley's claim. The plan itself states that debtor will assume the lease, and Berkley has not contended that a separate motion is required. *See In re The Casual Male Corporation*, 120 B.R. 256 (Bankr.D.Mass.1990).

Aside from the fact that debtor proposes to pay less than the delinquency amount claimed by Berkley, the plan seeks to cure the default over a 48 (or 60) month period. Section 365(b)(1) requires, however, that if a debtor does not immediately cure a default upon assumption, the debtor must provide adequate assurance of *prompt* cure of the default. It is obvious on the face of it that deferred payments over a four-year period do not constitute a prompt payment. Moreover, debtor's proposal to pay out the delinquency from earnings during the life of the plan can scarcely provide adequate assurance of her ability to cure the default. *See Bajardi v. Daugherty (In re Daugherty)*, 102 B.R. 167 (Bankr. E.D.Mo.1989) (chapter 13 plan denied confirmation where court held payments to cure executory contract default over a period of more than one year was not a prompt cure); *In re Yokley*, 99 B.R. 394 (Bankr. M.D.Tenn.1989) (confirmation denied where plan sought to cure rent default over two years).

■ The debtor argues that Section 525(a) of the Bankruptcy Code renders Section 365(b)(1) inapplicable to her attempt to assume the lease. In support of this position, her counsel cites *Housing Authority of the City of Erie v. Szymecki (In re Szymecki)*, 87 B.R. 14 (Bankr.W.D.Pa.1988)

and *In re Gibbs,* 9 B.R. 758, 763–64 (Bankr. D.Conn.1981); *reaff'd* 12 B.R. 737 (Bankr. D.Conn.1981); *aff'd* 76 B.R. 257 (D.Conn. 1983). *See also Sudler v. Chester Housing Authority (In re Sudler),* 71 B.R. 780 (Bankr.E.D.Pa.1987). These decisions all involved chapter 7 cases in which it was held that public housing authorities could not discriminate against (i.e., evict) debtors whose prepetition rent delinquencies had been discharged in bankruptcy. Of the cited cases, only in *Sudler* was the court confronted with a lease assumption, and that court did rule that "the strong public policy of 11 U.S.C. § 525 overrides the potential requirement of 11 U.S.C. § 365(b)(1)" for the assuming debtor to cure default. 71 B.R. at 787.

The decisions just cited involve rather sticky issues of public policy under § 525(a) and the rights of individuals to occupy public housing without benefit of contract, and some aspects of these rulings are at least debatable.[5] However, this court finds that these chapter 7 decisions involving public housing authorities have no application to our case.

Most obviously, § 525(a) regulates only discriminatory treatment against a debtor by a "governmental unit". Code section 101(27), which sets forth the definition of a governmental unit, does not include language suggesting the inclusion of private entities such as Berkley which merely receive public funds and are subject to governmental regulations.[6] The legislative history of Section 101(27) supports this conclusion because, although it states that the phrase is defined "in the broadest sense", the entity in question must be "actually carrying out some governmental function." H.R.Rep. No. 95–595, 95th Cong., 1st Sess., at 311 (1977), U.S.Code Cong. & Admin.News pp. 5787, 6268. This history thus indicates the entity must do more than merely receive government funds.

---

**5.** The ruling in *Sudler* that § 525 overrides § 365(b) was criticized in *Spruce Limited Partnership v. Lutz (In re Lutz),* 82 B.R. 699, 705 (note) (Bankr.M.D.Pa.1988).

**6.** § 101(27)
"[G]overnmental unit" means United States; State; Commonwealth; District; Territory;

In *Spruce Limited Partnership v. Lutz (In re Lutz),* 82 B.R. 699, 702 (Bankr. M.D.Pa.1988), the court addressed a similar issue in the chapter 13 context of whether a private entity that participates in a federally regulated housing program is subject to § 525(a) of the Bankruptcy Code. In a comprehensive discussion, the court reviewed the language of § 525(a), the definition of a "governmental unit" in Section 101(27) of the Bankruptcy Code and the legislative history to determine that a private entity that receives subsidy payments through a federally regulated housing program is not a governmental unit. *Id.,* 82 B.R. at 702–03. *See also In re Rosemond,* 105 B.R. 8 (Bankr.W.D.Pa.1989).

■ I agree with the court's conclusions in *Lutz;* Berkley is not a governmental unit, and consequently § 525(a) is inapplicable to our case. Moreover, in requesting the court to deny confirmation of the plan, Berkley is merely seeking its contractual rights under the lease to the extent allowed under § 365. This action is not discriminatory or otherwise violative of the Bankruptcy Code.

Berkley's objection to confirmation is sustained. A separate order denying confirmation has previously been entered.

municipality; foreign state; department, agency, or instrumentality of the United States ... a State, a Commonwealth, a District; a Territory, a municipality, or a foreign state; or other foreign or domestic government....