In re Traci Elizabeth ANDERSON f/k/a Traci Elizabeth Johnson, Debtor.

In re Geneva Joann MALONEY f/k/a Geneva Joann Funk, Debtor.

In re Thomas Lee SMITH, Debtor.

Bankruptcy Nos. 92–23876–SBB, 92–19663–SBB and 92–18632–SBB.

United States Bankruptcy Court, D. Colorado.

April 6, 1993.

Peter A. Milwid, Milwid & Schlosser, P.C., Denver, CO, for debtor Traci Elizabeth Anderson.

Thomas L. Foottit, Pueblo, CO, for debtor Geneva Joann Maloney.

C.J. Lewis, Westminster, CO, for debtor Thomas Lee Smith.

Pablo Simon Salas, Denver, CO, Asst. Atty. Gen., Colorado Student Loan Program.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on (1) Tracy Elizabeth Anderson's Motion to Confirm filed December 22, 1992; (2) Geneva Joann Maloney's Second Submitted Motion to Confirm filed December 22, 1992; and (3) Thomas Lee Smith's Motion to Confirm filed February 26, 1993. The Court, having re-

viewed the applicable files and being advised in the premises, makes the following findings of fact and conclusions of law.

The issue presented herein appears to be an issue of first impression in this District, although there seems to be no shortage of reported decisions out of other districts addressing the following question: May a court properly confirm a Chapter 13 plan which treats nondischargeable student loan debts more favorably than other unsecured nonpriority debts? This Court answers the question in the affirmative, but only when a debtor has proven the existence of extraordinary or compelling circumstances beyond the mere fact that the student loans are nondischargeable.

## I. FACTUAL BACKGROUND

### A. Traci Elizabeth Anderson.

Ms. Anderson filed a Voluntary Petition pursuant to Chapter 13 of the Bankruptcy Code on November 5, 1992. Her scheduled unsecured nonpriority creditors hold claims totalling $13,756.76 of which $2,356.13 represents three nondischargeable student loans. By way of her Chapter 13 Plan, Ms. Anderson proposes to create a subclass of student loan claims and pay them in full, with 10% interest. The other unsecured nonpriority creditors comprise a second subclass and are to share approximately $2,990.00 pro rata, or 26.2% of their claims. There are no outstanding objections to confirmation of Ms. Anderson's proposed Chapter 13 Plan.

### B. Geneva Joann Maloney.

Ms. Maloney filed a Voluntary Petition pursuant to Chapter 13 of the Bankruptcy Code on July 31, 1992. Her amended schedules reflect $27,792.00 in unsecured nonpriority debt. Nondischargeable student loans make up $22,870.00 of that total and $1,751.00 of the total debt is cosigned.[1] By way of an October 16, 1992 amended Chapter 13 Plan, Ms. Maloney proposes to create

eight subclasses of unsecured nonpriority debt, seven subclasses for each of her student loans, which would each receive about 18.3% of each claim,[2] and the eighth subclass for all other unsecured nonpriority debt. The eighth subclass would share approximately $200.00 pro rata or 4.1% of their claims. The amended Chapter 13 Plan expressly maintains that the proposed subclassification does not discriminate unfairly because the student loan debt is nondischargeable. There are no outstanding objections to confirmation of Ms. Maloney's proposed Chapter 13 Plan.

### C. Thomas Lee Smith.

Mr. Smith filed a Voluntary Petition pursuant to Chapter 13 of the Bankruptcy Code on July 9, 1992. His schedules indicate that he has $17,070.20 of unsecured nonpriority debt, of which $11,148.61 represents nondischargeable student loan debt and the remaining $5,921.59 consists of other unsecured nonpriority debt including $600.00 in back child support owed to the Denver City and County Department of Social Services. Mr. Smith filed a December 21, 1992 amended Chapter 13 Plan which provides for 100% payment of his student loans[3] and $721.81 pro rata (approximately 12.2%) to all other unsecured nonpriority claimants. The objection to confirmation by the Colorado Student Loan Program appears to have not been withdrawn and remains outstanding.

## II. DISCUSSION

■ Although no party has objected to confirmation on the issue of the propriety of subclassification, this Court has the independent obligation to determine whether the Chapter 13 plans at issue fulfill the requirements of the Bankruptcy Code. See, In re Christophe, 151 B.R. 475 (Bankr.N.D.Ill. 1993); In re Huerta, 137 B.R. 356, 366 (Bankr.C.D.Cal.1992); In re Northrup, 141 B.R. 171, 172 (N.D.Iowa 1991) (cases cited);

---

1. Interestingly, the cosigned debt has not been subclassed. 11 U.S.C. § 1322(b)(1).

2. None of the loans would be paid in full. The balance on each is conceded to be nondischargeable.

3. The amount of student loan debt is decreased to $10,526.80 by this plan amendment. Mr. Smith's schedules were not similarly amended to reflect the alleged decrease in principal.

*In re Henricksen,* 131 B.R. 467, 471 (Bankr. N.D.Okla.1991); *In re Fricker,* 116 B.R. 431, 437 (Bankr.E.D.Pa.1990); *In re Baez,* 106 B.R. 16, 18 (Bankr.D.Puerto Rico 1989).

Section 1325(a) of the Bankruptcy Code provides that a Bankruptcy Court shall confirm a Chapter 13 plan if,

> (1) the Plan complies with the provisions of this chapter and with the other applicable provisions of this title; [and if]
>
> \* \* \* \* \* \*
>
> (3) the plan has been proposed in good faith and not by any means forbidden by law....

11 U.S.C. § 1325(a)(1), (3).

More specifically, the Bankruptcy Code provides that a Chapter 13 plan may

> designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims....

11 U.S.C. § 1322(b)(1).

It appears to be undisputed that all of the student loan claimants at issue are unsecured nonpriority creditors. Since each of the Debtors propose to place those creditors in a separate subclass (or subclasses) and propose to treat those creditors differently from all of their other unsecured nonpriority creditors, this Court should determine whether the proposed disparate treatment constitutes either unfair discrimination under Sections 1322(b)(1)[4] and 1325(a)(1) or, perhaps, bad faith under Section 1325(a)(3).

In order to determine whether a Chapter 13 plan discriminates "unfairly," most courts have adopted the following four-part test:

> (1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the plan is proposed in good faith; [and] (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination. *In re Leser,* 939 F.2d 669, 672 (8th Cir. 1991).[5]

■ A debtor bears the burden of proof as to the elements of a confirmable, good faith plan under Section 1325. *See, e.g., In re Ristic,* 142 B.R. 856, 859 (Bankr.E.D.Wis. 1992); *Huerta, supra* at 365; *Fricker, supra* at 433; *In re Girdaukas,* 92 B.R. 373, 376 (Bankr.E.D.Wis.1988) (cases cited). "Because the Code presumes that creditors of like position will be treated equally, the courts additionally have held that the burden of proof on the question of whether the discrimination is fair is on the debtor." *In re Davidson,* 72 B.R. 384, 387 (Bankr.D.Colo. 1987). *Accord, Ledford v. McCormick,* 27 B.R. 434, 439 (Bankr.S.D.Ohio 1983); *In re Wolff,* 22 B.R. 510, 512 (9th Cir. BAP 1982).

■ Failure to satisfy each of the four *Leser* criteria will lead this Court to conclude that the discrimination favoring the nondischargeable student loan creditors over all other unsecured creditors is **unfair** and the plan cannot, thus, be confirmed. In each case, the Debtor must prove **fair** discrimination.

■ As to the first element set forth in *Leser,* this Court recognizes that ever since the Bankruptcy Code was amended to make student loans nondischargeable in Chapter 13,[6] Chapter 13 debtors stand to gain by

---

4. "Under the doctrine of *inclusio unius exclusio alterius* (the inclusion of one is the exclusion of another), § 1322, by specifically allowing cosigned consumer debts ... to be classified and treated separately from other unsecured claims without regard to unfair discrimination, apparently does not allow any other kinds of unsecured claims, including student loans, to be classified and treated differently than other unsecured claims unless such discrimination is fair." *In re Chapman,* 146 B.R. 411, 416 (Bankr. N.D.Ill.1992).

5. *Applied in, e.g., Chapman, supra; In re Liggins,* 145 B.R. 227 (Bankr.E.D.Va.1992); *Matter of Keel,* 143 B.R. 915 (Bankr.D.Neb.1992); *In re Saulter,* 133 B.R. 148 (Bankr.W.D.Mo.1991); *Matter of Tucker,* 130 B.R. 71 (Bankr.S.D.Iowa 1991).

6. Student Loan Default Prevention Initiative Act of 1990, Pub.L. 101–508 (effective November 5, 1990).

favoring student loan creditors. By favoring student loan creditors and paying their non-dischargeable obligations in full before their other unsecured nonpriority creditors receive a distribution, Chapter 13 debtors receive "a successful Chapter 13 plan and the [absolute] fresh start that comes with the consummation of that plan." *Christophe, supra* at 479. This Court concludes, however, that absent proof of extraordinary or compelling circumstances, "a successful plan and ... fresh start," standing alone, fails to constitute a "reasonable basis" for discriminating against other unsecured nonpriority creditors. In the instant cases, each of the Debtors has failed to prove such extraordinary or compelling circumstances exist. *Accord, In re Tucker,* 150 B.R. 203 (Bankr.N.D.Ohio 1992) (any separate classification of student loan obligations is prohibited if the classification is at the expense of general unsecured creditors); *Matter of Tucker,* 130 B.R. 71, 73 (Bankr.S.D.Iowa 1991) ("the fact that the requirement of 11 U.S.C. § 523(a)(8) now apply in Chapter 13 does not necessarily give the debtor a reasonable basis for favoring student loan creditors."). *Compare, Christophe, supra* at 478 (suggesting in *dicta* that the special rights of student loan creditors may, in some limited circumstances, form a reasonable basis for allowing favored treatment).

The second and fourth elements "seem to be two ways of asking the same question. That is whether the basis for the discrimination directly supports the nature and degree of disparate treatment proposed in the Plan. This question expresses a concern that debtors should not engage in any discrimination beyond what is necessary to accomplish the reasonable goal behind the discriminatory treatment," that is, the successful completion of the plan. *Christophe, supra* at 479. *See also, Matter of Keel,* 143 B.R. 915, 916 (Bankr.D.Neb.1992) ("There is nothing to suggest that non-payment of student loans would make it impossible for the debtor to complete a Chapter 13 plan.").

A determination of nondischargeability merely means that the obligation passes through or is unaffected by the discharge. Thus, for example, if a Chapter 13 debtor has an obligation to pay a student loan lender $100.00 per month for the next ten years, the debtor continues to owe the same $100.00 per month throughout the term of the plan and, even after discharge, until the student loan debt is paid in full.[7] If an arrearage exists, the plan can provide for additional funds to cure the arrearage through the plan pursuant to 11 U.S.C. § 1322(b)(5) (long term indebtedness).[8] *Compare, e.g., Keel, supra* at 916 (Student loans should be contrasted with alimony, maintenance, and support obligations. As a practical matter, it would be virtually impossible to propose a successful Chapter 13 plan that did not provide for payment in full of these obligations. Since Section 362(b)(2) permits assertion of these claims against the debtor's property without relief from the automatic stay, enforcement of these claims against post-petition wages could make plan performance impossible. The same is not true for student loan debt.); *In re Lawson,* 93 B.R. 979, 984 (Bankr.N.D.Ill.1988) (court suggested that discriminatory payments might be allowed to pay a doctor currently providing critical health care, to pay domestic support, or to pay a nonsufficient funds check when nonpayment would result in criminal prosecution); *In re Furlow,* 70 B.R. 973, 976 (Bankr.E.D.Pa.1987) (found a reasonable basis for treating payment of student loan obligations more favorably when payment was necessary to maintain eligibility to obtain further loans in order to finish school).

If the student loan creditor is not entitled to 100% repayment of the loan be-

---

7. "Undue hardship" is always available, as well, in applicable circumstances. 11 U.S.C. § 523(a)(8)(B).

8. "Even though such treatment may require treating student loans differently than other unsecured debt, it cannot be said that it would unfairly discriminate because the treatment would be in full accordance with code provisions." *In re Christophe,* 151 B.R. 475 (Bankr.

N.D.Ill.1993), quoting *Saulter, supra* at 150 ("It is also consistent with the 'fresh start' philosophy of the Code to insure that debtor emerges from her Chapter 13 plan with no student loan arrearage ... this must be precisely the result envisioned by Congress when it made student loans generally nondischargeable in a Chapter 13 plan.").

fore the scheduled completion of the Chapter 13 plan, then a plan which pays 100% of that loan during the term of the plan would unacceptably accelerate payment of the student loan debt to the detriment of other creditors. "That would be unfair to the other unsecured creditors, because the debtor would be forcing them to bear the cost of early payment of the student loan without a corresponding justification." *Christophe, supra* at 480. *Accord, In re Tucker,* 150 B.R. 203 (Bankr. N.D.Ohio 1992) (the nondischargeability of student loans "is the debtor's problem which he cannot foist off on his other unsecured creditors."); *In re Saulter,* 133 B.R. 148, 149–50 (Bankr.W.D.Mo.1991) ("In essence, debtor's plan shifts the student loan nondischargeability burden from herself onto her general unsecured creditors.... This Court does not find such rationale to be a reasonable basis for discriminatory treatment.").

■ Finally, on the issue of whether the plan is proposed in good faith, courts have held that "the totality of the circumstances" must be considered, including the dischargeability of claims which are not receiving full or favorable payment. *See, e.g., Matter of Smith,* 848 F.2d 813, 817–21 (7th Cir.1988). Necessary in such a consideration is an evaluation of overall "fairness." Since there is no minimum payment requirement for unsecured debt in Chapter 13 cases, a very meager payment to unsecured creditors by itself should not be a decisive factor on the question of a debtor's good faith. "Nevertheless, in this court's view, an extremely low percentage payment plan warrants close examination for other indications of bad faith. The problem becomes much more acute when the plan creates different classes of unsecured debt and proposes to pay some classes in full and little or nothing to others." *In re Liggins,* 145 B.R. 227, 230 (Bankr.E.D.Va.1992). *See, also, Christophe, supra* at 478 (dealing with the fairness issue); *In re Chapman,* 146 B.R. 411, 418–19 (Bankr.N.D.Ill.1992) ("It hardly seems to be an appropriate use of

equity to allow the debtor to force the holders of dischargeable claims, who are guilty of nothing more than bad judgment in giving the debtor credit, to fund his education.... Only the debtor derives benefit from the proposed discrimination in cases such as these. Since the debtor already has received the education funded by the student loans, the other creditors do not get any benefit from the discriminatory payments such as enhancement of the likelihood of success in completing the plan due to improvement in career skills and qualifications. Here there is no balancing of relative benefits allocated to the debtor and creditors from the proposed discrimination. Instead, the scales are tipped entirely in favor of the debtor.").

Given the status of these cases, this Court's conclusion that the discrimination occasioned here is unfair, and the absence of further evidence pertinent to the issue of good faith, this Court cannot make a final determination or finding of an absence of good faith. The pleadings and quality of available evidence simply do not allow the Court to do so at this time.

■ This Court agrees with and adopts the conclusion of the vast majority of cases which have held that, absent proof of extraordinary or compelling circumstances,[9] discriminatory and favorable treatment of unsecured student loan claims over all other unsecured claims constitutes unfair discrimination. Chapter 13 plans which contain such provisions, without compelling justification, cannot be confirmed. *Accord, Christophe, supra; In re Tucker,* 150 B.R. 203 (Bankr. N.D.Ohio 1992); *Chapman, supra; Liggins, supra; Keel, supra; Saulter, supra; Matter of Tucker,* 130 B.R. 71 (Bankr.S.D.Iowa 1991); *In re Scheiber,* 129 B.R. 604 (Bankr. D.Minn.1991). *Compare, Matter of Foreman,* 136 B.R. 532 (Bankr.S.D.Iowa 1992) (100% payout to all creditors); *In re Boggan,* 125 B.R. 533 (Bankr.N.D.Ill.1991) (the issue of unfair discrimination not addressed).

None of these Debtors have made a showing that their proposed discriminatory and

---

9. One court pointed out that certain missing details ... would be particularly relevant to the analysis ...: (i) what payments were due under the loan agreement; (ii) when is the last payment due under the loan agreement; (iii) whether any arrearages exist; (iv) whether the payments have been accelerated pursuant to the loan agreement before the bankruptcy petition was filed; and (v) whether or not the proposed 100% payout would accelerate payments under the loan agreement. *Christophe, supra* at 477.

232

favorable treatment of the student loans is reasonable or necessary; the record fails to reveal any circumstances which might warrant, in effect, equitably subordinating the claims of the other unsecured claims. *Chapman, supra* at 418. Each debtor has failed in his/her burden to show that a reasonable basis exists for the discriminatory classification of nonpriority unsecured claims. *In re Davidson,* 72 B.R. 384, 387 (Bankr. D.Colo.1987).

Accordingly, it is

ORDERED that Tracy Elizabeth Anderson's Motion to Confirm filed December 22, 1992 is DENIED; and it is

FURTHER ORDERED that Geneva Joann Maloney's Second Submitted Motion to Confirm filed December 22, 1992 is DENIED; and it is

FURTHER ORDERED that Thomas Lee Smith's Motion to Confirm filed February 26, 1993 is DENIED; and it is

FURTHER ORDERED that Tracy Elizabeth Anderson, Geneva Joann Maloney, and Thomas Lee Smith may file amended Chapter 13 plans conforming to the provisions of this Memorandum Opinion and Order on or before *April 19, 1993,* failing which their respective cases may be dismissed.