### In re Carolyn W. WHITSETT, Debtor.

### Bankruptcy No. 93–16138DAS.

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 9, 1994.

Gregory H. Lindsay, Collingdale, PA, for debtor.

Robert H. Holber, Media, PA, for NCHP.

Edward Sparkman, Philadelphia, PA.

*MEMORANDUM*

DAVID A. SCHOLL, Bankruptcy Judge.

After an extensive hearing of January 6, 1994, on the Motion of NCHP Property Management ("NCHP") for relief from the automatic stay in order to evict the Debtor and her family from a federally-subsidized housing unit, we entered an Order providing that

[t]he automatic stay shall remain in effect only if and only as long as the Debtor ... shall

  a. Make the monthly payments of at least $282 [her present, subsidized rent payment] to NCHP ...

  b. File or have the Trustee file a motion to assume the alleged lease between NCHP and herself on or before January 14, 1994, and obtain an order allowing assumption of the least [sic] at a hearing scheduled on

THURSDAY, FEBRUARY 3, 1994, at 9:30 A.M.

On February 3, 1994, counsel for the Debtor and NCHP appeared before us in reference to the Debtor's motion requesting the Trustee to assume the parties' lease ("the Motion"), filed pursuant to that Order.

Counsel incorporated the record made on January 6, 1994, and presented argument in lieu of further testimony.

NCHP posed several arguments in defense of the Motion: (1) The parties' lease had been terminated by a pre-petition state court judgment awarding it possession of the premises and hence it could not be assumed; (2) The Debtor could not cure certain of the non-economic breaches of the lease, disputes over which had been the subject of the hearing of January 6, 1994, *i.e.*, the Debtor's alleged failure to promptly report her obtaining employment and her resident daughter's attainment of adulthood and welfare income; her failure to report as an asset a bank account containing $916.27; and her constant late remittance of rent, in addition to her economic breach of the lease resulting in delinquent rents of about $1,800; (3) The Debtor's present proposal to cure the rent delinquency of about $1,800 by making plan payments of $45 monthly did not effect a "prompt" cure of same, as required by 11 U.S.C. § 365(b)(1)(A); and (4) The Debtor's past history of defaults in rental payments rendered her incapable of providing "adequate assurance of future performance," as required by 11 U.S.C. § 365(b)(1)(C).

■ The Debtor's responses, and the court's resolution of each of these objections is as follows:

(1) The issue of whether a judgment for possession based upon unpaid rent terminates a lease was thusly addressed by Judge Sigmund of this court in *In re Goodwin*, Bankr. No. 93–15445DWS, slip op. at *5 (Bankr.E.D.Pa. Dec. 19, 1993):

> Under Pennsylvania law, applicable here, a lease is not terminated when the tenant fails to pay rent until the tenant is physically evicted. *In re Karfakis*, [1993 WL 512846, slip op. at *7, 162 B.R. 719, 727] (Bankr.E.D.Pa. Dec. 10, 1993); *In re Morningstar Enterprises, Inc.*, 128 B.R. 102, 106 (Bankr.E.D.Pa.1991); *In re C & C TV Appliance, Inc.*, 97 B.R. 782, 787 (Bankr.E.D.Pa.1989), *aff'd* 103 B.R. 590 (E.D.Pa.1989); [*In re*] *Sudler*, 71 B.R. [780,] at 784 [ (Bankr.E.D.Pa.1987) ]. This is because, under Pennsylvania common law and court rule, a tenant retains a right

to cure any rental deficiency and preserve the tenancy until the moment of actual valid and complete eviction. *Karfakis*, slip op. at [*7, p. 727].

---

4. Pa.R.C.P.J. No. 518 (Satisfaction of Order by Payment of Rent Costs) provides:

> At any time before actual delivery of the real property is made in execution of the order for possession, the defendant may, in a case for the recovery of possession solely because of failure to pay rent, satisfy the order for possession by paying to the executing officer the rent actually in arrears and the costs of the proceedings....

We accept this statement, which cites to our own prior decisions, as a correct view of Pennsylvania law. The exhibits in the record, the Landlord and Tenant Complaint and the Order for Possession but not the Judgment itself, are inconclusive as to whether the Judgment was based solely on the Debtor's failure to pay rent. In any event, it was established that the Debtor had paid her rent into escrow pending an appeal, which suggests that the Judgment for Possession was not final. *Cf. In re Bergman*, 103 B.R. 660, 668 (Bankr.E.D.Pa.1989); and *In re Levitt*, 18 B.R. 595, 598 n. 11 (Bankr.E.D.Pa.1982) (a Pennsylvania state-court judgment which on appeal is not accorded finality).

■ Furthermore, even if we assume that the judgment for possession was based on non-economic grounds and was not appealed, given the disfavor which the Pennsylvania courts have shown for forfeitures, *see C & C TV & Appliance, supra*, 97 B.R. at 786; and *Sudler, supra*, 71 B.R. at 785, it is likely that the Pennsylvania courts would engage in an analysis of the materiality of the non-economic grounds for possession before finding them sufficient to irrevocably terminate a debtor's lease. This analysis is likely to be similar to that which we engage in regarding the Debtor's right to cure under 11 U.S.C. § 365(b), *see* pages 754–55 *infra*, and the result would be likely to be the same. Also pertinent is the observation, in *Sudler*, 71 B.R. at 787, that "good cause" for termination of the leasehold interest of a tenant in federally-subsidized housing must be estab-

lished. This principle suggests that a lease of a tenant in such housing can be terminated only for a "material" lease violation. We therefore find that the record does not contain sufficient evidence to support the conclusion that NCHP's prepetition judgment for possession terminated the parties' lease.

The second objection presents the issue of whether a non-monetary default in a lease agreement can ever be cured. *See In re Deppe*, 110 B.R. 898, 904 (Bankr.D.Minn. 1990) (a debtor franchisee's lapse of operations is a non-monetary default which is a "historical fact" and cannot be overcome by any future performance). However, it is clear that a bankruptcy court has "some latitude" in determining whether provisions in a debtor-tenant's lease may be deemed waived and their compliance be deemed insignificant in the assumption process. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1090 (3rd Cir.1990). The determining factor appears to be the "materiality" of the default in issue. *Id.* at 1092.

In *In re Yardley*, 77 B.R. 643, 644–46 (Bankr.M.D.Tenn.1987), the court held that a tenant in a federally-subsidized housing project could assume a lease despite his having been convicted of brandishing a pocket knife and exchanging vulgar language with a security guard who attempted to accost the debtor for carrying a lighted cigarette in the project's lobby, all of which conduct was arguably in violation of the parties' lease terms. However, the court found the debtor's future promises not to carry lighted cigarettes in the lobby area, to cease carrying a pocket knife, and to stop speaking to the security guard were held to suffice as curative behavior. *Id.* at 646. The debtor was permitted to assume the lease. *Id.*

In *In re Ruffin*, 1991 WL 173331 (Bankr. E.D.Pa. Sept. 6, 1991), this court allowed a debtor to assume a public housing lease despite a shooting incident at, and attempted arson of, the debtor's public housing unit by a male friend of the female debtor-tenant, on the condition that the debtor, who had obtained a protection from abuse order against the protagonist of these actions, stay away from him and inform the police or the administration of the housing project if she sighted him near the premises. *See also In re Wright*, Bankr. No. 93–11618DAS (Bankr. E.D.Pa. April 30, 1993) (public housing tenant permitted to assume her lease despite her resident son's prior drug activity, unknown to her, at the premises, on the condition that she not allow her son to reside in the unit in the future).

NCHP alternatively urged that this court grant it relief from the automatic stay to resolve the issue of the Debtor's right to cure the non-economic lease violations in state court, as Judge Fox of this court had done in an unreported decision. Having obtained a pre-petition state-court judgment for possession, NCHP suggested that this disposition would preclude the Debtor's assumption of the lease. *But see* pages 753–54 *supra* (state court judgment may be on appeal and might not be interpreted as causing a total forfeiture of the Debtor's rights under the parties' lease).

The facts that we find significant in considering this objection to the lease assumption in the instant factual matrix are that (1) the Debtor credibly testified she made timely efforts to report her employment and her daughter's receipt of public assistance to NCHP's assistant property manager. A copy of a handwritten note, allegedly left at NCHP's on-site office, but reportedly not received by its administrative personnel, was produced by the Debtor and admitted into evidence at the January 6, 1994, hearing. We conclude that the Debtor made a reasonable effort to report the changes in her family's income to NCHP's management, and that the Debtor was not guilty of "fraud," as charged by NCHP; (2) the funds in the bank account in issue were established as consisting almost entirely of a rent escrow held for NCHP in connection with an appeal from a judgment in favor of NCHP. Clearly, these funds should not be deemed to constitute an asset which was improperly unreported and unknown to NCHP; and (3) the late payments can obviously be remedied by NCHP's collection of late charges.

In sum, none of the Debtor's non-monetary lease violations appear sufficiently "material" to constitute incurable bases for the Debtor's eviction from her subsidized housing, which

is perhaps her single most significant material possession. We therefore hold that these lease violations, singly or in concert, are not sufficiently "material" to deem their "non-cure" as a basis for denial of the Motion.

We perceive no basis for deferring such a decision to the state courts. This is not the approach suggested in *Joshua Slocum*. The result in the case decided by Judge Fox referenced by NCHP appeared to have been driven by the unsettled nature of issues raised by the debtor-tenant regarding the enforceability of provisions of the pertinent federal regulations and state law addressing the issue of when drug activity requires tenant eviction. No such unsettled issues of law are presented here. Moreover, our decisions in *Ruffin* and *Wright* support this court's belief that such issues, even when drug-related, may well be proper fare for a bankruptcy court to determine.

■ The third objection causes us to apply the principles set forth in our decision in *In re Gold Standard at Penn, Inc.*, 75 B.R. 669 (Bankr.E.D.Pa.1987), in the instant factual setting. Regarding the "promptly cure" requirement of § 365(b)(1)(A), we stated there, *id.* at 673, that, despite the presence of few cases so allowing,

> a period of time in excess of a year could be prompt depending on the circumstances. *See In re Coors of North Mississippi, Inc.*, 27 B.R. 918 (Bankr.N.D.Miss. 1983) (curing of default of between $110,-000.00 and $115,000.00 within a 3–year period is a prompt cure in the circumstances presented there, particularly in light of the prospective longevity of successful business operations).

In *Gold Standard*, we expressed our disapproval of a cure period extending more than five years. *Id.* at 673, 675.

We also note that, in *In re Liggins*, 145 B.R. 227, 231 (Bankr.E.D.Va.1992), the court disapproved a public housing tenant's offer to cure a rent delinquency over a 48–month to 60–month period. Similarly, in *In re Yokley*, 99 B.R. 394 (Bankr.M.D.Tenn.1989), the court refused to allow the public housing tenant to cure her rent delinquency over a two-year period. The court felt that the debtor had not proven that she had sufficiently strong financial resources to make the payments necessary to effect assumption, nor that the contractual relationship was expected to be an extended one, as compared to the circumstances of the tenant at issue in *Coors, supra.* Finally, in *In re Lloyd*, 1992 WL 167047 (Bankr.E.D.Pa. July 6, 1992), this court suggested that a three-year to five-year cure of a delinquency in a private lease agreement was not sufficiently prompt. *Id.* at 394.

In the midst of oral argument between counsel on this Motion on February 3, 1994, the Debtor's counsel expressed the Debtor's willingness and ability to increase her plan payments to $100 monthly, which it appears would result in a complete cure of the rental delinquency in slightly less than two years.

Despite the misgivings of the *Yokley* court as to very similar terms, we are inclined to conclude that, with certain additional conditions imposed upon the Debtor, the time period for cure manifested by the most recent proposal of the Debtor could be acceptable. We note that, in *Lloyd*, the term of the debtor's lease had already expired, making any assumption of that lease problematic. Also, the instant lease involves federally-subsidized housing, concerning which certain "layers of protection" for the Debtor's leasehold interest attach. *See Sudler, supra,* 71 B.R. at 787.

Specifically, in the instant context, we are prepared to require that, as an additional condition for allowing the lease assumption, the Debtor must include provisions in her plan requiring that she pay at least $100 to the Trustee monthly; that she remain current on her rent and plan payments for two years after confirmation of her plan; and that, if she fails to do so, her bankruptcy case will be dismissed and no further case may be filed for 180 days. We deem these particular provisions appropriate because the Debtor has a long history of rent delinquencies and bankruptcy filings. *See In re Oglesby*, 150 B.R. 620, 627–28 (Bankr.E.D.Pa.), *remanded,* 158 B.R. 602 (E.D.Pa.1993), *reinstated on remand,* 161 B.R. 917 (Bankr.E.D.Pa.1993) (a mortgagee-debtor was required to add simi-

lar provisions to her plan as a condition for our confirmation of the debtor's plan).

With these assurances of future performance or swift recourse against the Debtor, NCHP is, in our view, sufficiently assured that appropriate curative performances of the Debtor are forthcoming. NCHP is clearly not prejudiced by such an arrangement, as it will recoup lost rentals which otherwise would appear to be uncollectible. *See Gold Standard, supra,* 75 B.R. at 675 (landlord fares quite well in receiving current rent plus delinquent rent upon a lease assumption). The contractual relationship between the Debtor and NCHP should remain intact for an extended period, as the tenant has a perpetual right to renewal of a lease for a federally-subsidized housing unit unless "good cause" for termination exists. The conditions added to the plan will empower NCHP to permanently terminate the lease if conduct which would constitute "good cause" for termination transpires. Therefore, under these circumstances, we find that conditions comparable to those which marked the *Coors* case are present.

Finally, as to NCHP's fourth objection, we find that the appendage of the conditions on the Debtor's performance described above will provide NCHP with "adequate assurance of future performance," or a quick path to recourse.

We shall therefore grant the Motion in the attached Order, subject to the conditions described herein.

### ORDER

AND NOW, this 9th day of February, 1994, after an argument of counsel of February 3, 1994, on the Debtor's Motion for Trustee to Assume Unexpired Residential Lease, into which the record of the hearing of January 6, 1994, on the Motion of NCHP Property Management ("NCHP") for relief from the automatic stay of January 6, 1994, was incorporated, it is ORDERED AND DECREED as follows:

1. The Motion is GRANTED if and only if the Debtor meets the following conditions:

  a. The Debtor shall file and appropriately serve on NCHP and all other creditors, on or before February 15, 1994, an Amended Plan which shall include the following provisions:

    (1) Payments to the Trustee of not less than $100 monthly, beginning in February, 1994, not less than $85 monthly of which is dedicated to payments on the delinquent rent owed to NCHP.

    (2) An agreement to make all payments on future rents to NCHP and to the Trustee promptly, reinforced by a provision allowing NCHP to certify to this court any material default of a plan provision during the first twenty-four (24) months of the plan, after twenty (20) days' notice and right to cure to the Debtor and her counsel.

    (3) An agreement that, upon the Debtor's failure to contest an allegation of, and/or the entry of a court order confirming, a material default in the Debtor's plan performance, this case will be dismissed, and no other bankruptcy case may be filed by the Debtor within 180 days of the entry of the order of dismissal unless by express permission of the court upon motion after notice of its filing to NCHP.

  b. The Debtor shall:

    (1) Continue to make monthly payments of at least $282 to NCHP on or before the 15th day of February, 1994, and each successive month.

    (2) Make payments of at least $100 to the Trustee on or before the 25th day of February, 1994, and the 25th day of each successive month.

2. Any Objection to the Amended Plan shall be filed and appropriately served on or before March 14, 1994.

3. The hearing to consider confirmation of the Debtor's plan (presently scheduled on March 10, 1994) is postponed until THURSDAY, MARCH 17, 1994, at 9:30 A.M. and shall be held in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.

4. A Plan consistent with this Order and otherwise in conformity with applicable law must be duly confirmed on March 17, 1994,

or this case may be dismissed with prejudice at that time.