**In re Yorlanda CHRISTOPHE, Debtor.**

**Bankruptcy No. 92 B 08939.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Feb. 22, 1993.

Kofkin Keld & Korrub, Chicago, IL, for debtor.

## MEMORANDUM OPINION ON THE CONFIRMATION OF DEBTOR'S PROPOSED CHAPTER 13 PLAN

JACK B. SCHMETTERER, Bankruptcy Judge.

Debtor Yorlanda Christophe has proposed her amended Chapter 13 plan for confirmation. No party has objected to this plan. However, the Court exercised its independent obligation to determine whether the proposed plan fulfilled the requirements of 11 U.S.C. §§ 1322 and 1325. There is a question concerning the proposed plan's treatment of an unsecured student loan obligation to IDAPP as a special class of unsecured creditors to be paid 100%.

The confirmation hearing was continued for debtor to offer evidence justifying the special treatment of IDAPP when other unsecured creditors will receive only 32% under the Plan. The issue is whether the Plan discriminates "unfairly" under 11 U.S.C. § 1322(b)(1).

Debtor waived her right to present evidence, and rested on the record (as found in the Order entered December 2, 1992). Debtor's counsel submitted only his Memorandum of Law in support of Debtor's Plan. For reasons stated herein, by separate order the Court will deny confirmation of Debtor's Chapter 13 plan, but allow time for an amended plan in accord with this ruling. If the Debtor again seeks to give IDAPP some form of preferential treatment as against other unsecured creditors, her counsel will again be afforded an opportunity to offer evidence in support to comply with § 1322(b)(1).

### FACTUAL BACKGROUND

Debtor filed her Chapter 13 petition on April 19, 1992. Her scheduled debts consist of $11,100 of secured debt, $9,300 owed

on the IDAPP unsecured student loan, and $6,960 of other unsecured debt. Also, Debtor estimates that she has $2,000 of administrative expenses (consisting of $800 in attorney's fees and about $1,200 in trustee's fees).

Debtor asserts that the student loan is non-dischargeable under 11 U.S.C. § 523(a)(8), and that assertion has not been questioned. However, none of the details of this loan were presented as evidence before the Court. The missing details that would be particularly relevant to the analysis below are the following: (i) what payments were due under the loan agreement; (ii) when is the last payment due under the loan agreement; (iii) whether any arrearages exist; (iv) whether the payments have been accelerated pursuant to the loan agreement before the bankruptcy petition was filed; and (v) whether or not the proposed 100% payout would accelerate payments under the loan agreement.

Debtor's proposed amended Chapter 13 Plan calls for 56 monthly payments of $440 a month. The questioned provision in that Plan is the division of the unsecured creditors into two classes. The general unsecured creditors would receive 32%, while the separately classified student loan creditor would receive 100%.

## JURISDICTION

This matter is before the Court pursuant to 28 U.S.C. § 157 and is referred here by Local District Court Rule 2.33. Subject matter jurisdiction lies under 28 U.S.C. § 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

## DISCUSSION

Bankruptcy Code § 1325(a), Title 11 U.S.C., provides that a Court shall confirm a Chapter 13 plan if:

(1) the Plan complies with the provisions of this chapter and with the other applicable provisions of this title;

. . . . .

(3) the plan has been proposed in good faith and not by any means forbidden by law;

. . . . .

11 U.S.C. § 1325(a). Section 1325(a)(1) relates to § 1322(b)(1) which provides,

Subject to subsections (a) and (c) of this section, the plan may—

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims. . . .

11 U.S.C. § 1322(b)(1).

■ There is no question here that the student loan claimant is an unsecured, non-priority creditor. However, Debtor has proposed in her Plan to place that creditor in a separate class, and proposes to treat it differently from all other unsecured, non-priority creditors. Therefore, it must be determined whether this disparate treatment constitutes unfair discrimination under § 1322(b)(1) or bad faith under § 1322(b)(3). A bankruptcy judge may not confirm a Chapter 13 plan that is not presented in good faith or unfairly discriminates in violation of § 1322(b)(1) because such a plan would not fulfill the requirement of § 1325(a)(1) that it comply with the provisions of Chapter 13. *In re Lawson*, 93 B.R. 979, 981 (Bankr.N.D.Ill.1988).

■ This Court has an obligation to determine whether debtors carry their burden to show that all elements required of a Plan under Chapter 13 have been met by them, whether or not any party in interest objects. *In re Rimgale*, 669 F.2d 426, 431 (7th Cir.1982). *See also In re Stein*, 91 B.R. 796, 799 (Bankr.S.D.Ohio 1988); and *In re Snider Farms, Inc.*, 83 B.R. 977, 986 (Bankr.N.D.Ind.1988) (both finding that courts have an independent duty to determine whether a Chapter 13 plan should be confirmed pursuant to § 1325(a)).

The statute provides no standards for determining when a plan discriminates "unfairly". Courts have recognized four issues relevant to determine whether discrimination is unfair:

(1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the plan is proposed in good faith; (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.

*In re Leser,* 939 F.2d 669, 672 (8th Cir. 1991); *In re Chapman,* 146 B.R. 411, 417 (Bankr.N.D.Ill.1992).

### *Is there a reasonable basis for discriminating in favor of non-dischargeable student loan creditors?*

Several courts have held that the non-dischargeability of student loans by itself does not constitute a reasonable basis for treating student loan creditors more favorably than other unsecured creditors. *In re Chapman,* 146 B.R. 411; *In re Tucker,* 130 B.R. 71 (Bankr.S.D.Iowa 1991); *In re Scheiber,* 129 B.R. 604 (Bankr.D.Minn. 1991); *In re Cronk,* 131 B.R. 710 (Bankr. S.D.Iowa 1990). *Tucker, Scheiber,* and *Cronk* found that the mere fact that a student loan creditor would have recourse against a debtor if the conditions of § 523(a)(8) are not satisfied is not enough, by itself, to justify discriminatory treatment in favor of that student loan creditor. *See, e.g., Tucker,* 130 B.R. at 73. In *Chapman,* Judge Ginsberg reasoned that allowing a Chapter 13 debtor to pay 100% of student loans while paying only 10% of the other unsecured debt is tantamount to equitable subordination of the other unsecured claims without complying with 11 U.S.C. § 510(c). *Chapman,* 146 B.R. at 418.

If a Chapter 13 plan pays 100% of student loans while paying only a small percentage of other unsecured debt, then money that could have been distributed *pro rata* to all unsecured creditors is being paid mainly to student loan creditors. The other unsecured creditors may thereby, in effect, be forced to finance the debtors' student loans by giving up part of the possible payment on their claims. This is what the earlier cited opinions found objectionable.

In the instant case, Debtor argues that she is not taking any repayment away from her unsecured creditors because she is adding 20 monthly payments on to the minimum required 36–month Plan period. Debtor's Memorandum at pp. 7–9. However, this argument fails because the amount of money available to creditors is still fixed as a set amount regardless of whether the Plan calls for 36 or 56 monthly payments. Debtor's plan would result in $9,300 being paid to the student loan creditor. That sum could have been distributed *pro rata* to all the unsecured creditors, and this aspect is not changed by the addition of 20 more payments to the Plan.

However, the special rights of student loan creditors may in some circumstances form a reasonable basis for allowing a debtor to treat such creditors favorably. Discrimination is considered to be reasonable and therefore fair when it is "related to the debtor's objective interest in completing the plan and obtaining a fresh start or maintaining a decent quality of life." *Tucker,* 130 B.R. at 73, *citing Lawson,* 93 B.R. at 984. A creditor holding a non-dischargeable student loan may sue to enforce a debtor's obligation in state court, and obtain a judgment against that debtor. *See, e.g., Indiana University v. Canganelli,* 149 Ill.App.3d 852, 103 Ill.Dec. 278, 280, 501 N.E.2d 299, 301 (1st Dist.1986) (affirming a judgment on a student loan entered against a debtor who had previously received a discharge in bankruptcy). Such action would often cause such a debtor to default on the Chapter 13 plan, and might thereby cause the Chapter 13 case to be dismissed or converted to a Chapter 7 liquidation case. 11 U.S.C. § 1307(c). Thus, a debtor's objective interest in completing a Chapter 13 plan may be advanced by allowing the full payment of what is actually due under the student loan agreement.

Such reasoning was applied in *In re Boggan,* 125 B.R. 533 (Bankr.N.D.Ill.1991), in which Judge Barliant confirmed a Chapter

13 plan that fully paid student loans but paid only 15% on other unsecured debt. Judge Barliant found that a reasonable basis for this disparate treatment will often (though not always) exist, because

> the Chapter 13 debtor will *nearly always* have a valid interest in giving educational loans special treatment because the educational loan creditor will, unless the conditions in § 523(a)(8)(A) or (B) are met, always have recourse against the Debtor. Therefore, it will *usually* be proper for a Chapter 13 plan to specially classify student loans.

*Boggan*, 125 B.R. at 534. (Emphasis supplied.)

Judge Wedoff's analysis in *In re Lawson*, 93 B.R. 979, is also consistent with this approach. In that case, a Chapter 13 debtor proposed to pay his student loans in full while paying only 10% of his other unsecured debt. When this opinion was issued (in 1988), student loans were dischargeable in Chapter 13 cases, but not in Chapter 7. *Chapman*, 146 B.R. at 419. Based on his analysis of these applicable Bankruptcy Code provisions and Seventh Circuit precedent (the *Smith* and *Rimgale* opinions), Judge Wedoff held that a Chapter 13 plan which paid student loans on an equal, *pro rata* basis with all the other unsecured debt could have been proposed in good faith. *Lawson*, 93 B.R. at 985–90. However, he concluded that the debtor's discrimination in favor of his student loan creditor was unfair because the debtor was not required by circumstances to pay in full the student loan creditor in order to propose a Chapter 13 Plan. *Lawson*, 93 B.R. at 990.

Judge Wedoff's analysis rested on the concept that good faith and the fairness of discrimination should be analyzed from the debtor's perspective. The result of this analysis was that the debtor was not permitted to do what he was not forced to do under the circumstances.

The law has changed since *Lawson* was issued. The Bankruptcy Code has since been amended to make student loans non-dischargeable in Chapter 13. P.L. 101–647 § 3621; *Boggan*, 125 B.R. at 534. With the change in law, Chapter 13 debtors do stand to gain something by favoring their student loan creditors: that is, a successful Chapter 13 plan and the fresh start that comes with the consummation of that plan. *Id.* Thus, applying Judge Wedoff's analysis leads to the conclusion that debtors may now discriminate to some degree in favor of student loan creditors because such discrimination is necessary to consummate a Chapter 13 plan.

### Is the degree of discrimination directly related to the basis for the discrimination?

Finding that a reasonable basis may sometimes exist for the preferential treatment of student loans does not end the analysis of whether unfair discrimination is present; the other factors must be considered. The second and fourth factors in the test for unfair discrimination set out by the 8th Circuit in *Leser*, 939 F.2d at 672, seem to be two ways of asking the same question. That is whether the basis for the discrimination directly supports the nature and degree of disparate treatment proposed in the Plan. This question expresses a concern that debtors should not engage in any discrimination beyond what is necessary to accomplish the reasonable goal behind the discriminatory treatment. As Judge Wedoff explained, "discrimination is 'fair,' and therefore permissible, to the extent, and only to the extent that it rationally furthers an articulated, legitimate interest of the debtor." *Lawson*, 93 B.R. at 984.

To find out the extent of necessity for discrimination, a debtor's obligations regarding non-dischargeable debt must be examined. A determination that a debt is non-dischargeable under 11 U.S.C. § 523(a) merely means that the discharge issued under the Bankruptcy Code will not change or diminish the debtor's obligation to pay that debt.

Thus, if a Chapter 13 debtor has an obligation to pay the student loan lender $100 a month for the next ten years, then non-dischargeability of that obligation merely means that the debtor will continue to owe

that $100 every month throughout the term of the Chapter 13 plan. It further means that, after all plan payments are completed, the discharge order obtained under 11 U.S.C. § 1328(a) would not free debtor of the obligation to continue paying $100 every month for the remaining term of the student loan.

A debtor may have fallen behind in making his monthly payments so that an arrearage exists on the date that the Chapter 13 petition is filed. In this situation, the Chapter 13 plan can reasonably and fairly provide for the regular monthly payments plus additional funds to cure the arrearage in accordance with 11 U.S.C. § 1322(b)(5).[1] This section is most often used to cure defaults on home mortgages or car loans. However, by its terms, it applies to all long-term indebtedness where the last payment would be due after the plan is completed, and it is not limited to secured debt. *See* § 1322(b)(5) (referring to "any unsecured claim or secured claim"). *See also In re Saulter*, 133 B.R. 148, 150 (Bankr.W.D.Mo.1991); 5 *Collier on Bankruptcy*, ¶ 1322.09[1] (15th Ed.1992).

A student loan is generally paid off in monthly installments over a long period of years. The student loans held by Chapter 13 debtors may have a payment schedule that would not end until after their plan payments are completed. Therefore, § 1322(b)(5) would be directly applicable to cure arrearages in these loans. As explained in *Saulter*, 133 B.R. at 150,

> Debtor need only formulate a plan which treats her student loans as long term indebtedness under section 1322(b)(5). Even though such treatment may require treating student loans differently than other unsecured debt, it cannot be said that it would unfairly discriminate because the treatment would be in full accordance with code provisions. It is also consistent with the 'fresh start' philoso-

phy of the Code to insure that debtor emerges from her Chapter 13 plan with no student loan arrearage.... this must be precisely the result envisioned by Congress when it made student loans generally non-dischargeable in a Chapter 13 plan.

*See also In re McKinney*, 118 B.R. 968 (S.D.Ohio 1990); *In re Newberry*, 84 B.R. 681 (Bankr.E.D.Cal.1988); *In re Geehan*, 59 B.R. 600 (Bankr.S.D.Ohio 1986) (allowing debtors to treat their student loans as long-term debt under § 1322(b)(5) in order to confirm Chapter 13 plans). Thus, debtors may provide for the preferential treatment of student loan creditors by providing in their plans for the funding of all monthly payments as they become due, plus the curing of arrearages.

However, even when an arrearage is present, there may still be no justification for the 100% payment of the student loan at the expense of other unsecured creditors. As earlier discussed, the reasonable basis for the disparate treatment of student loan creditors is to prevent them from derailing the Chapter 13 plan. This goal is accomplished when the student loan creditor receives what it is entitled to receive under its loan agreement. Obviously, a creditor who is receiving what it is contractually entitled to receive will have no basis for obtaining a judgment against the debtor. If the student loan creditor is not entitled to 100% repayment of its loan before the scheduled completion of the Chapter 13 plan, then a plan which pays 100% of that student loan during that period would accelerate payment of the student loan debt. That would be unfair to the other unsecured creditors, because the debtor would be forcing them to bear the cost of early payment of the student loan without a corresponding justification. 11 U.S.C. § 1322(b)(1); *Saulter*, 133 B.R. at 149–50.

This approach is not inconsistent with the statements in *Tucker, Scheiber,* and *Cronk*

---

1.  11 U.S.C. § 1322(b)(5) provides that a Chapter 13 plan may,

    notwithstanding paragraph (2) of this subsection [§ 1322(b)(2) grants Chapter 13 debtors some ability to modify the rights of secured creditors], provide for the curing of any

default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

that a student loan creditor's recourse against a debtor for a non-dischargeable student loan is not enough, by itself, to justify discriminatory treatment in favor of that student loan creditor. *See, e.g., Tucker,* 130 B.R. at 73. Those opinions are consistent with this Court's analysis because their holding requires that a debtor must show not only a non-dischargeable student loan, but also that the proposed discriminatory treatment is fully justified by factual circumstances surrounding the loan agreement.

The Seventh Circuit has twice considered whether a Chapter 13 plan which places non-dischargeable debts in a separate class for different treatment than other unsecured debt can be proposed in good faith. *In re Smith,* 848 F.2d 813 (7th Cir.1988); *In re Rimgale,* 669 F.2d 426 (7th Cir.1982). In both cases, the Seventh Circuit held that Bankruptcy Courts must consider "the totality of the circumstances", including the dischargeability of claims which are not receiving 100% payment, to decide the issue of good faith. *Smith,* 848 F.2d at 817–21; *Rimgale,* 669 F.2d at 431–32. The Circuit has further suggested in dicta that claims arising out of fraudulent conduct could be separately classified and paid more than other unsecured claims. *Smith,* 848 F.2d at 822; *Rimgale,* 669 F.2d at 433, n. 22. The comprehensive discussion of *Smith* and *Rimgale* recited in *Chapman,* 146 B.R. at 413–15, makes clear that these Circuit cases are not necessarily controlling precedent on the issue presented here, i.e. whether a Chapter 13 plan that would pay student loans 100% while paying other unsecured creditors only 32% unfairly discriminates in violation of § 1322(b)(1). However, the logic of the "totality of circumstances" approach in those cases to decide good faith of classification applies as well here to decide fairness and good faith of discrimination between classes of unsecured creditors.

## CONCLUSION

While there may well be a reasonable basis for Debtor to continue to make her monthly payments, or even to cure arrearages, there has been no showing that such facts are present here or are related to the provision in her plan calling for 100% payment of her student loan debt over the 56 months of the proposed Plan.

 The burden is on the proponent of a plan to prove that the disparate treatment of different classes is not unfairly discriminatory. *Chapman,* 146 B.R. at 417. Debtor has presented no evidence on this issue. Indeed, she waived her right to present evidence at a hearing specially set for that purpose. Accordingly, the Court must find that Debtor has not met her burden to prove under 11 U.S.C. § 1322(b)(1) and (3) that her proposal to pay 100% of her student loan does not unfairly discriminate against the other unsecured creditors and is made in good faith. Nor has she demonstrated any need or right to cure an arrearage under § 1322(b)(5).

By order entered separately this day, the Court denies confirmation of Debtor's proposed Chapter 13 plan pursuant to § 1325(a)(1).