**In re Robin and Lori L. EILAND, Debtors.**

**Bankruptcy No. 94 B 00697.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

June 21, 1994.

Laura E. Sherman, Kofkin Feld & Korrub, Chicago, IL, for debtors.

Bader & Donkel, Richton Park, IL, for Sunset Lake Apartments.

Office of Craig Phelps, Chapter 13 Trustee, Chicago, IL.

U.S. Atty. James Burns, Chicago, IL.

### REISSUED MEMORANDUM OPINION ON DEBTORS' CHAPTER 13 PLAN

JACK B. SCHMETTERER, Bankruptcy Judge.

#### Introduction

■ Debtor's Chapter 13 Plan came on for confirmation hearing. No objections were filed. However, this Court has an independent duty to determine that the Plan satisfies the requirements of law before confirming that Plan. 11 U.S.C. § 1325(a)(1). *In re Rimgale,* 669 F.2d 426, 431 (7th Cir.1982); *McCullough v. Brown,* 162 B.R. 506, 508 n. 3 (N.D.Ill.1993); *In re Christophe,* 151 B.R. 475, 476 (Bankr.N.D.Ill.1993).

Without the benefit of briefs by debtors or any parties, the Court reviewed the Plan. It presents these issues: May a claim for non-dischargeable student loans be classified as a priority claim and thus paid ahead of other general unsecured claims under debtors' Chapter 13 Plan? If not, may such loans nonetheless be classified separately and treated differently from other unsecured claims pursuant to 11 U.S.C. § 1322(b)(1), and, if so, by what standards?

For reasons stated below, confirmation is denied because the student loans may not be classified as "priority" claims. They may be separately classified in an amended Plan provided requisite fairness standards are met under 11 U.S.C. § 1322(b)(1). Upon filing of an amended Plan, an evidentiary hearing will be set to see if those standards can be met, or whether the amended Plan must be disapproved under § 1325(a)(1) for failure to comply with the Bankruptcy Act or under § 1325(a)(3) for using a means forbidden by the Act.

#### FACTS

Debtors propose a Plan providing for 100% payment of both secured and unsecured claims. Debtors' Schedule F, "Creditors Holding Unsecured Non–Priority Claims," lists a $4,000.00 debt owed to the United States Department of Education ("United States") for student loans that became due in 1982. The schedules do not indicate what entity presently owns the obligations. The Plan provides that the student loans shall be paid 100% as a "tax or other priority claim." Under this Plan, the claim for student loans is thereby to be paid in full before other unsecured creditors start receiving pro rata monthly payments on their debts. Those other unsecured creditors are eventually to be paid 100%. In this case, only one such other unsecured creditor is scheduled, a former landlord allegedly owed $1500.00.

Most Chapter 13 confirmed plans fail to complete. Unsecured creditors scheduled to be paid at the plan end do not get paid in such cases. While these debtors appear well able to make the proposed payments for the Plan duration, it is by no means certain that they will actually do so. Unsecured creditors are not to share plan payments with the United States. Should debtors stop payments after the student loans are paid off, the other unsecured creditors will get nothing.

#### Jurisdiction

This matter is before the Court pursuant to 28 U.S.C. § 157 and is referred here by Local District Court Rule 2.33. Subject matter jurisdiction lies under 28 U.S.C. § 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

#### DISCUSSION

##### Student Loans Are Not A Tax or Other Priority Claim

■ Debtors' Plan proposed treating the student loans as a "tax or other priority claim." There is no question that the student loans are not a tax. Moreover, there is no statutory authority to support debtors' treatment of the student loans as a priority claim. Section 507 of the Bankruptcy Code, Title 11 U.S.C., enumerates the priorities for distribution in bankruptcy.[1] It provides that specified expenses and claims against the bankruptcy estate have designated priorities.

---

1. Section 507(a) provides in part:

    a) The following expenses and claims have priority in the following order:

    (1) First, administrative expenses allowed under section 503(b) of this title ...
    (2) Second, unsecured claims allowed under section 502(f) ...

Student loans are not included among the list of priorities.

Except in limited circumstances, student loans are excepted from discharge under 11 U.S.C. § 523(a)(8).[2] Therefore many creditors have sought to pay as much as possible on those loans, even when that gives risk to other unsecured creditors and effectively deprives them of any payment. As discussed below, some courts have held that a Chapter 13 debtor may classify student loans separately from other unsecured debts and give those loans preferential treatment pursuant to § 1322(b)(1). Giving student loans preferential treatment in effect gives such creditors what amounts to a form of priority, but such classification is subject to the standards re-

quired under § 1322(b)(1) through an amended plan. If Congress had intended that student loan creditors receive a priority distribution under § 507, it would have so provided, rather than excepting such debts from discharge under § 523(a)(8). Since Congress did not give priority to such loans under § 507, a debtor may not do so in order to avoid § 523(c)(8) and the standards for separate classification under § 1322(b)(1). For this reason alone, the present Plan is not confirmable.

### Debtors' Right to Classify Fairly in Chapter 13 Plans

There remains the issue of whether debtors' student loans may be separately classi-

---

(3) Third, allowed unsecured claims for wages, salaries, or commissions, including vacation, severance, and sick leave pay—

(A) earned by an individual within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business ... but only

(B) to the extent of $2,000 for each such individual.

(4) Fourth, allowed unsecured claims for contributions to an employee benefit plan—

(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business ... but only

(B) for each such plan, to the extent of—

(i) the number of employees covered by each such plan multiplied by $2,000; less

(ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

(5) Fifth, allowed unsecured claims of person—

(A) engaged in the production of raising grain ... against a debtor who owns or operates a grain storage facility ... or

(B) engaged as a United States fisherman against a debtor who ... is engaged in operating a fish produce storage or processing facility....

(6) Sixth, allowed unsecured claims of individuals, to the extent of $900 for each such individual, arising from the deposit ... of money in connection with the purchase, lease or rental of property, or the purchase of services ... that were not delivered or provided.

(7) Seventh, allowed unsecured claims of governmental units, only to the extent such claims are for—

(A) a tax on or measured by income or gross receipts ...

(B) a property tax assessed before the commencement of the case and last payable with-

out penalty after one year before the date of the filing of the petition;

(C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;

(D) an employment tax on a wage, salary, or commission of a kind specified in paragraph (3) of this subsection earned from the debtor before the date of the filing of the petition ... for which a return is last due ... after three years before the date of the filing of the petition;

(E) an excise tax....

(F) a customs duty arising out of the importation of merchandise ...

(8) Eighth, allowed unsecured claims based upon any commitment by the debtor the Federal Deposit Insurance Corporation, the Resolution Trust Corporation, the Director of the Office of Thrift Supervision, the Comptroller of the Currency, or the Board of Governors of the Federal Reserve System....

11 U.S.C. § 507.

**2.** Section 523(a) provides in part:

A discharge under Section ... 1328(b) of this title does not discharge an individual debtor from any debt—

.        .       .       .

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-profit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless—

(A) such loan ... first became due before more than 7 years ... before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents....

11 U.S.C. § 523(a).

fied under § 1322(b)(1) through any amended Plan to be filed. Until 1990, government guaranteed student loans were dischargeable under Chapter 13, although they were non-dischargeable in cases filed under Chapters 7, 11, and 12. *McCullough v. Brown,* 162 B.R. 506, 508 (N.D.Ill.1993). In 1990, Congress passed the Student Loan Default Prevention Initiative Act, making government guaranteed student loans non-dischargeable in Chapter 13 cases absent a showing of undue hardship. In response to the new legislation, debtors have sometimes attempted to pay off burdensome, long-term student loans quickly through plans to repay non-dischargeable student loans in full during their plans, at the expense of their other unsecured creditors. *Id.* Under such plans, the debtor typically proposes that the student loan creditor receive a 100% distribution on its claim while other unsecured creditors receive a much smaller distribution. In this case, the debtor proposes that the student loan creditor receive a 100% distribution prior to other unsecured creditors receiving a 100% distribution. In light of the large percentage of Chapter 13 plans that do not complete, whether the other unsecured creditors would in fact receive 100% or anything at all is a question that cannot now be answered without benefit of an operating crystal ball.

■ The Bankruptcy Code does specifically allow for differing classification of claims, including unsecured debts. Section 1322(b) provides:

> . . . [T]he plan may—
> (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated. . . .

Because § 1322(b)(1) allows for separate classification of claims,

> no taint automatically attaches to a Chapter 13 plan merely because it creates a differentiation in treatment among classes of unsecured claims—just because it "discriminate[s] against" one or more classes in the nonpejorative sense of the word "discriminate." Instead, the statutory prohibition is limited to plans that "discriminate unfairly". . . .

*McCullough,* 162 B.R. at 508–509. However, debtors do not have an unlimited right to classify and treat claims differently under their Chapter 13 Plan. Section 1325(a) provides that a court shall confirm a Chapter 13 plan only if the plan complies with all provisions of Chapter 13 and if the "plan has been proposed in good faith." 11 U.S.C. § 1325(a)(1) and (3).

It is clear that these debtors seek to discriminate in favor of the student loan creditor. Debtors even attempted to place the student loan claims in a special category entitled "tax or other priority claim," without any statutory support for such classification. Pursuant to their Plan, the student loan creditor is to receive distribution before other unsecured creditors, thus having both the benefit of the time-value of the money and minimizing its exposure to risk that debtors may never complete their Chapter 13 Plan. Thus, the issue to be presented under § 1322(b)(1) by any amended plan seeking to classify the student loan for more favorable treatment than other creditors is whether such plan "discriminates unfairly."

### *What Is Unfair Discrimination Under § 1322(b)(1)?*

The Code does not provide a standard for determining when a Chapter 13 plan discriminates "unfairly." *See In re Christophe,* 151 B.R. 475, 478 (Bankr.N.D.Ill.1993). As a result, a wide variety of approaches can be found in many authorities struggling to decide what Congress meant by the word "unfairly" in that provision. When Congress uses an essentially subjective word like "unfairly", it is no wonder that different meanings are read into it.

One such approach was the four-part test originally articulated in *In re Kovich,* 4 B.R. 403, 407 (Bankr.W.D.Mich.1980), now commonly known as the *Leser* test after its adoption in *In re Leser,* 939 F.2d 669, 672 (8th Cir.1991) (plan provided for preferential treatment of unsecured claims for child support arrearages). A second approach is the "legitimate interest of the debtor" test, first articulated by Bankruptcy Judge Eugene Wedoff of this District in *In re Lawson,* 93

B.R. 979, 984 (Bankr.N.D.Ill.1988). Another is the "correlative benefit to creditor test" articulated by District Court Judge Milton Shadur in *McCullough v. Brown*, 162 B.R. 506 (N.D.Ill.1993) (rejecting Judge Wedoff's "legitimate interest of creditor" test).

This Court recently reviewed an analogous fact pattern in *In re Christophe*, 151 B.R. 475 (Bankr.N.D.Ill.1993). Debtor's plan there created a special class of unsecured debt consisting of her student loans. Debtor proposed paying her secured debts and her student loans 100% before remitting any money to general unsecured creditors. Pursuant to that plan, general unsecured creditors would receive only a 32% distribution on their claims. *Id.*, 151 B.R. at 477.

In *Christophe*, this Court applied a hybrid of the "legitimate interest" test and the four-point *Leser* standard. The *Leser* standard examines:

> (1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the plan is proposed in good faith; (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.

*See Leser*, 939 F.2d at 672; *In re Chapman*, 146 B.R. 411, 417 (Bankr.N.D.Ill.1992) (applying *Leser* test); *Lawson*, 93 B.R. at 984.

In *Christophe*, the first part of the *Leser* test was found to be satisfied: the debtor showed she had a reasonable basis for discriminating in favor of non-dischargeable student loan creditors. *Christophe*, 151 B.R. at 478. With the recent change in the Bankruptcy Code excepting student loans from discharge in Chapter 13 cases, it was reasoned that "Chapter 13 debtors do stand to gain something by favoring their student loan creditors: that is, a successful Chapter 13 plan and the fresh start that comes with the consummation of that plan." *Id.* at 479.

*Christophe* continued its analysis of whether the plan was unfairly discriminatory and found that the second and fourth prongs of the *Leser* test can be collapsed into the same issue: whether the basis for the discrimination directly supports the nature and degree of disparate treatment proposed in debtor's

plan. *Id.* In other words, debtors should not engage in any discrimination beyond what is necessary to accomplish the reasonable goal behind the discriminatory treatment. *Id.* The Court cited Judge Wedoff's reasoning in *In re Lawson*, that "discrimination is 'fair,' and therefore permissible to the extent that it rationally furthers an articulated, legitimate interest of the debtor." *Id.*, *citing Lawson*, 93 B.R. at 984.

> If a Chapter 13 plan pays 100% of student loans while paying only a small percentage of other unsecured debt, then money that could have been distributed *pro rata* to all unsecured creditors is being paid mainly to student loan creditors. The other unsecured creditors may thereby, in effect, be forced to finance the debtor's student loans by giving up part of the possible payment on their claims.

*In re Christophe*, 151 B.R. at 478.

This Court further reasoned in *Christophe* that,

> [T]he reasonable basis for the disparate treatment of student loan creditors is to prevent them from derailing the Chapter 13 plan. This goal is accomplished when the student loan creditor receives what it is entitled to receive under its loan agreement. Obviously, a creditor who is receiving what it is contractually entitled to receive will have no basis for obtaining judgment against the debtor. If the student loan creditor is not entitled to 100% repayment of its loan before the scheduled completion of the Chapter 13 plan, then a plan which pays 100% of that student loan during that period would accelerate payment of the student loan debt. That would be unfair to the other unsecured creditors, because the debtor would be forcing them to bear the cost of early payment of the student loan without a corresponding justification.

*Id.* at 480 (citations omitted). *Christophe* held that, while there might be a reasonable basis for a debtor to continue making monthly payments, or even to cure arrearages, debtor had the burden to show by evidence that such basis existed. *Id.*

### The McCullough Decision

The most recent District Court decision addressing this issue was *McCullough v. Brown,* 162 B.R. 506 (N.D.Ill.1993), decided by Judge Shadur. It reviewed at length the authorities on point. Judge Shadur agreed with Judge Wedoff's rejection of the *Leser* test, but disagreed with Judge Wedoff's "legitimate interest of debtor" test. *McCullough* held that a plan discriminates unfairly unless general unsecured creditors receive a correlative benefit for the discriminatory treatment. It reasoned that questions of unfair discrimination must be viewed from the perspective of creditors, not that of debtors.

In *McCullough,* a separate class of unsecured student loan creditors was created by the Chapter 13 plan, a class to be paid 100%. *Id.* at 507. The remaining unsecured creditors were to receive a 10% distribution. Upon completion of that proposed plan, debtor would have been left with no unsecured debt.

Judge Shadur held that the *Leser* test is faulty because it simply explains a result rather than explaining why the result is reached. *Id.* He rejected the first part of the *Leser* test, reasoning that a judge who tries to determine whether there is a "reasonable basis" for discrimination wields unchecked discretion, implementing his or her personal preferences by the manner in which the judge goes about deciding on reasonableness. *Id.* He then considered the second portion of the *Leser* test: whether the debtor can carry out a plan without discrimination. Judge Shadur dismissed this portion of the test, concluding that debtors could almost always design a plan that does not discriminate. *Id.,* 162 B.R. at 510. Moreover, he agrees with Judge Wedoff's analysis that a plan does not necessarily discriminate unfairly simply because debtor is able to propose a plan that does not discriminate. *Id., citing In re Brown,* 152 B.R. 232, 236 (Bankr. N.D.Ill.), *rev'd.,* 162 B.R. 506 (N.D.Ill.1993). The express grant by Congress to debtors of the right to engage in some discrimination, so long as it is not unfair, would be meaningless if all discrimination were *per se* unfair.

The opinion in *McCullough* then rejected the third prong of the test requiring that a plan be proposed in good faith. It first found that a "good faith" inquiry is not necessary because § 1325(a)(3) requires a finding that a plan has been proposed in good faith before a plan may be confirmed. *Id.* at 510; *McCullough,* 162 B.R. at 510. Moreover, Judge Shadur agreed with Judge Ginsberg's analysis that an inquiry into good faith in such a context is largely circular. *Id., citing In re Chapman,* 146 B.R. 411, 415 (Bankr.N.D.Ill. 1992).

Judge Shadur then rejected the "legitimate interest of debtor" test used by Judge Wedoff. He first concluded that Judge Wedoff inappropriately applied equal protection jurisprudence to classification in Chapter 13 plans:

> Judge Wedoff's "rational" or "legitimate" interest formulation imputes to bankrupt individuals the rulemaking force and legitimacy wielded by state governments: the authority to discriminate on the basis of a rational advancement of legitimate state interests.

*Id.,* 162 B.R. at 511. Second, Judge Shadur found that Judge Wedoff's test improperly focused only on the perspective of the debtor, not the perspective of the creditors affected by debtor's plan. *Id.,* 162 B.R. at 511. Judge Shadur concluded that § 1322(b)(1) is ultimately intended as a creditor protection device. *Id.* The opinion reasoned that

> the normal meaning of "unfairly against any class" measures the unfairness of the difference in treatment ("discriminat[ion]") in terms of unfairness to the *victim* ("against any class"), rather than unfairness to the person who elects to impose the discriminatory treatment ... After all, the drafter of the plan decides whom to favor and whom not to favor in the first instance. Educated self-interest can thus be counted on to avoid any proposal that would operate "unfairly" against the drafter.

*Id.,* 162 B.R. at 512. Judge Shadur then supported his reading of § 1322(b)(1) by reviewing that section's legislative history and examining it in conjunction with the rest of the Bankruptcy Code. The opinion reasoned

that the Code amendment with specific intent that student loans not be dischargeable in Chapter 13 cases provided a most persuasive argument for generally not allowing debtors to select a plan that allows them to emerge from bankruptcy free of student loans when that is to the detriment of other general unsecured creditors. The opinion concluded that, if Congress had intended for debtors to prefer student loan creditors, it would have provided a statutory priority for such a claim. *Id.* at 513.

*McCullough* did not seek to develop a universal standard for determining when a plan discriminates unfairly, but focused only on the student loans then at issue. *Id.* at 516. The Student Loan Default Prevention Initiative Act was viewed as intended to prevent discharge of student loans. *Id.* The very narrow exceptions to the non-dischargeability of student loans found in § 523(a)(8) were seen to support the conclusion that debtors should not be allowed to shift student loan obligations to other parties—whether those other parties be the government, a lending institution, or general unsecured creditors. *Id.* The Court held that

> there may well be factors that would not satisfy the Section 523(a)(8)(B) standard for the full dischargeability of student loan debt, but could yet justify some discriminatory favorable treatment of such debts. But no such factor has been identified by any debtor in this case....

*Id.*

Judge Shadur reasoned that fairness of classification must be viewed from the perspective of creditors other than the student loan lenders. He found that:

> what remains clear is that no Chapter 13 plan can be approved that treats unpaid student loans more favorably than other unsecured debts solely because they *are* student loans. If a plan affording such preferential treatment is to survive scrutiny under the statutory "discriminates unfairly" test, the debtor must place some-

thing material onto the scales to show a correlative benefit to the other unsecured creditors....[3]

*Id.* at 517–18.

Following the *McCullough* reasoning, does it make a difference in this case that all unsecured creditors are ostensibly to get 100% under the Plan here despite any separate treatment or classification? One decision that addressed that question directly was in *In re Foreman,* 136 B.R. 532 (Bankr. S.D.Iowa 1992). There, the debtor's Chapter 13 plan provided for 100% payment to all creditors. Under that plan, the secured creditors and the unsecured student loans were to be paid first. *Id.* at 534. Only then were general unsecured creditors to be paid anything, and they were then to receive their 100% distribution. *Id.* The *Foreman* court held that the plan did not unfairly discriminate because:

> 1) the plan provides for a 100% repayment of all unsecured claims; 2) the student loan obligations are non-dischargeable; and 3) the debtor has the right under § 1322(b)(5) to provide for payments on any unsecured claim to be made concurrently with payments on any secured claim.

However, the court cautioned:

> While the proposed plan's classification and order of payment do not discriminate unfairly, the court is aware of the additional burden the plan places on the remaining unsecured creditors. They bear the risk that the plan will fail and they will have received proportionately less than the unsecured lenders who were paid first because they held student loan claims ... In light of these risks borne by the remaining unsecured creditors, the court cautions the debtor that absent a substantial change in the debtor's financial circumstances, any future decision to convert or refile this case under Chapter 7 will result in careful court scrutiny and an assessment of whether the conversion or refiling consti-

---

**3.** Judge Shadur provided the following example of when a creditor may receive a corresponding benefit from discriminatory treatment under the plan: discrimination may be fair when "the current payment of student loans may be necessary in order to permit the student to return to school and earn a degree." *McCullough v. Brown,* 162 B.R. 506, 516 n. 17 (N.D.Ill.1993), *citing In re Freshley,* 69 B.R. 96, 97–98 (Bankr.N.D.Ga. 1987).

tutes a "substantial abuse" of the Bankruptcy Code.

*Id.* at 535 (citations omitted).

This Court cannot follow the latter reasoning. From the thousands of Chapter 13 cases, we will not likely notice dismissal of this one after student loans are paid. "Careful court scrutiny" at that point is unlikely. Even if scrutinized carefully, what would be the remedy at that point should the student loans be fully paid and other unsecured creditors be paid nothing? Conversion to Chapter 7 in order to discharge all unsecured debt will not help those creditors. Nor will dismissal help them. Indeed, the debtor would have a *fait accompli* at that point.

Unwilling to follow *Foreman,* which of the diverse approaches in this field are more persuasive and more in accord with purposes of the Bankruptcy Code?

[5, 6] The opinion of Judge Shadur is the law of the case in which it was rendered. However, despite the fact that Judge Shadur sat as an appellate court reviewing a bankruptcy judge's decision in that case, his opinion is not *stare decisis* binding on the bankruptcy judges of this District, as an opinion of the Seventh Circuit Court of Appeals would be. While the question has not been decided by higher courts here, more recent authority finds that a District Judge's opinion in a bankruptcy appeal does not have *stare decisis* effect if that judge is sitting in a judicial district where more than one district judge is sitting. *In re Shattuc Cable Corp.,* 138 B.R. 557 (Bankr.N.D.Ill.1992); *In re Gaylor,* 123 B.R. 236 (Bankr.E.D.Mich.1991); *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey,* 160 B.R. 882, 898 (Bankr.S.D.N.Y.1993). *Contra: In re Moisson,* 51 B.R. 227, 229 (Bankr. E.D.Mich.1985); *In re Investment Sales Diversified Inc.,* 49 B.R. 837, 846 (Bankr. D.Minn.1985). Thus, while bankruptcy judges should give deference to the opinion of any higher authority in this District, we are free to examine and weigh the strengths of that opinion.

■ However, Judge Shadur's opinion has much in it that is persuasive, even though not binding. The reasoning in *Christophe,* which

looked to fairness from the debtor's perspective, seems misplaced. The reasoning of Judge Shadur, which looked to fairness from the creditor's perspective, seems the better view for the reasons he articulated.

■ This Court will not, however, necessarily find Judge Shadur's "correlative benefit" test of creditor fairness to be the only test of fairness from the creditor's perspective. In each case, debtors have the burden to demonstrate fairness from the creditor's perspective, and the Court is not so foresighted as to anticipate all circumstances that may demonstrate fairness. Perhaps, for example, lack of substantial harm to creditors may be shown, so benefit need not be demonstrated to show fairness. Or other circumstances may be seen to substitute for "correlative benefit" as a test of fairness to creditors. Indeed, if the other creditors were to affirmatively accept the Plan, that would indicate that they perceive no harm to them, and there would likely be no reason for the Court to question that. A fact-driven analysis is required.

### *A Fairness Hearing Will be Required on the Amended Plan*

■ Once an amended plan is filed here that eliminates the non-existent "priority" for student loans, a separate classification will cause the plan on its face to discriminate. The issue then will be whether the discrimination is unfair under § 1322(b)(1). A hearing must then be held to determine whether the discrimination is unfair from the perspective of the creditors. Various grounds for fairness may be argued. *See, e.g.,* n. 3, *supra.* Various circumstances may be relevant, such as

(1) Whether the proposed Amended Plan will in fact harm or delay the other unsecured creditors if it does or does not complete.

(2) Whether early payment of loans is required to enable debtor to complete school.

(3) When the last payment is due under the loan agreement, and whether that date falls after the plan is to complete.

(4) whether any arrearages exist.

(5) Whether payments have been accelerated pursuant to the loan agreement before the bankruptcy petition was filed.

(6) Whether or not the proposed 100% payout under the plan would accelerate payments under the loan agreement.

(7) Whether the preferred payment of the student loans under the Plan is intended to cure any default.

*See McCullough,* 162 B.R. at 516 n. 17, and *In re Christophe,* 151 B.R. 475, 477 (Bankr. N.D.Ill.1993).

### Lack of Objection Under § 1321(b)(1) Appears Irrelevant

As yet, there is nothing before the Court to show the practical effect on other creditors if the debtor pays the school loan first. Since no one has objected under § 1325(b)(1), there has been no occasion for the Court·to determine whether all of debtor's projected disposable income is to be offered under the Plan. That appears factually irrelevant because debtor now offers a pot of money in the Plan, whether or not it comprises all disposable income. Debtor wants to empty that pot into the student lender's pocket first. If the proceeding is dismissed before the Plan completes, the pot will be empty and any other unsecured creditors will be relegated to such lawsuits as may be feasible several years hence. It therefore appears irrelevant whether anyone has objected under § 1325(b)(1) for the Court to determine fairness under § 1322(b)(1). However, argument on that point will be invited at the hearing.

### Possible Application of § 1322(b)(5)

A number of cases have held that, if arrearages exist when the Chapter 13 petition is filed, § 1322(b)(5) [4] may be used to cure such arrearages. *See In re Christophe,* 151 B.R. 475, 480 (Bankr.N.D.Ill.1993) (dicta); *In re Benner,* 156 B.R. 631 (Bankr. D.Minn.1993); *In re Saulter,* 133 B.R. 148, 150 (Bankr.W.D.Mo.1991); *In re McKinney,* 118 B.R. 968 (S.D.Ohio 1990); *In re Newber-*

ry, 84 B.R. 681 (Bankr.E.D.Cal.1988); *In re Geehan,* 59 B.R. 600 (Bankr.S.D.Ohio 1986); 5 *Collier on Bankruptcy,* ¶ 1322.09[1] (15th ed. 1992) at 1322–23. Under such authorities, § 1322(b)(5), which is typically used by Chapter 13 debtors to maintain mortgage payments or other long-term debt while curing arrearages on such debt, is used to cure arrearages on student loans. Thus, a debtor may be able to use § 1322(b)(5) as statutory authority for providing a certain type of preferential treatment under the plan to some creditors. *Benner,* 156 B.R. at 633, *In re Bradley,* 109 B.R. 182, 184 (Bankr.E.D.Va. 1990). In other words, under § 1322(b)(5), a form of discrimination is sometimes possible in bankruptcy, even if creditors can correctly view it as most unfair.

In *In re Saulter,* 133 B.R. 148 (Bankr. W.D.Mo.1991), the debtor classified her student loans in a separate class from other unsecured claims. The plan proposed that the student loan claims would receive 100% payment under the plan while the general unsecured creditors would receive a 10% distribution. *Id.* at 149. The plan was originally confirmed. However, upon reconsideration, the court withdrew its confirmation of debtor's plan, finding it unfairly discriminatory in violation of § 1322(b)(1). *Id.* at 150. The court provided *in dicta* that, because the final payments on the student loans became due after the completion of the Chapter 13 plan, the student loan could be treated as long-term debt and defaults thereof cured under § 1322(b)(5) without violating the § 1322(b)(1) prohibition against unfair discrimination. *Id.,* 133 B.R. at 150.

The court in *Benner* concluded that excluding student loans from the non-priority unsecured class was not unfairly discriminatory because § 1322(b)(5) expressly provides for such treatment. 156 B.R. at 635. The court reasoned:

> By its express terms, section 1322(b)(5) applies to both secured *and unsecured debt.* Long-term student loan obligations with payment terms that extend beyond

---

4. 11 U.S.C. § 1322(b)(5) provides that a Chapter 13 plan may, notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and mainte-

nance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

completion of the plan fall squarely within the ambit of section 1322(b)(5). Since student loan debt and marital dissolution obligations are the only significant type of long-term debt carried by chapter 13 debtors, section 1322(b)(5) would be rendered largely ineffective with respect to unsecured debt if student loans could not be treated thereunder solely because the creditor would receive better treatment than other non-priority unsecured creditors.... [S]tudent loan debt which is properly treated outside the plan in accordance with section 1322(b)(5), does not result in unfair discrimination in violation of section 1322(b)(1).

*Benner*, 156 B.R. at 634. This Court agreed *in dicta* that "debtors may provide for the preferential treatment of student loan creditors by providing in their plans for the funding of all monthly payments as they become due, plus the curing of arrearages." *Christophe*, 151 B.R. at 480. The logic of that view still holds under Judge Shadur's analysis. Moreover, if the non-dischargeable student loans are not cured or otherwise managed, they may lead to great financial pressure on debtors, thus threatening the plan and other creditors. All unsecured creditors derive a benefit from a stable, sensible, and untroubled plan.

### CONCLUSION

It has been argued in other cases that, if a debtor is not allowed to prefer its student loan creditors, the debtor's fresh start will be significantly impeded. While Congress decided that a party who successfully completes a Chapter 13 bankruptcy receives a fresh start, Congress also made the policy decision that not all fresh starts are equal. In § 523(a) of the Bankruptcy Code, Congress determined that some debts survive discharge. The list of non-dischargeable obligations includes student loans, along with other specified debts. 11 U.S.C. § 523(a).

To allow debtors to obtain a more valuable "fresh start" than Congress permitted by preferring student loan creditors would be giving debtors what was taken away by § 523(a)(8). Such result is not required or suggested by statute or case law

and does not comport with the clear statutory purpose. Congress indicated through the 1990 amendments to the Bankruptcy Code that discharge of student loan obligations is only to be allowed in special circumstances, those being hardship and loans of a duration exceeding seven years. 11 U.S.C. § 523(a)(8). Absent such circumstances, those loans must ordinarily be treated the same as other unsecured debt. Consequently, debtors have a heavy burden to demonstrate fairness to creditors under § 1322(b)(1).

Confirmation here is denied as to the Plan now on file under 11 U.S.C. § 1325(a)(1) and (3). Time will be given to file an amended Plan, following which a hearing will be held to see if any discrimination then sought is or is not unfair to creditors.