**In re Johnny and Venus DAVIS, Debtors.**

**Bankruptcy No. 96 B 30730.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

June 11, 1997.

Mark D. Harrison, Chicago, IL, pro se Creditor.

David E. Haracz, Legal Assistance Foundation of Chicago, Chicago, IL, for Respondent.

### MEMORANDUM OPINION ON HARRISON'S OBJECTION TO PLAN

JACK B. SCHMETTERER, Bankruptcy Judge.

Debtors filed an Amended Chapter 13 Plan which classified unsecured creditors into two groups, one which was to receive full payment and one only a percentage. Mark Harrison ("Harrison") as an unsecured creditor objected to Debtors' plan, asserting that these classifications unfairly discriminated against him. The parties filed briefs and the matter was taken under advisement. For reasons stated below, and based on the undisputed facts asserted, Harrison's objection to Debtors' amended Chapter 13 plan will be denied.

### BACKGROUND

The relevant facts are undisputed:

Johnny and Venus Davis ("Debtors") reside in an apartment complex managed by Diversified Realty Corporation ("Diversified"), pursuant to a month to month lease. Debtors' apartment is federally subsidized by the United States Department of Housing and Urban Development ("HUD"). Debtors pay a below-market rate of $277 per month. Debtors' lease provides for automatic monthly renewal unless the lease is terminated. Grounds for termination include non-payment of rent. Debtors currently owe Diversified approximately $6,558 in rent arrearage.

On November 15, 1996, Debtors filed their voluntary petition under Chapter 13 of the Bankruptcy Code, Title 11, 11 U.S.C. § 101, *et seq.* On February 4, 1997, Debtors filed their amended plan. The Amended Plan creates a separate classification for the unsecured non-priority debt for Diversified's rent arrearage. It proposes to pay Diversified's claim in full, while paying only 10% to the other unsecured creditors. In addition, Debtors' plan proposes to assume their lease agreement with Diversified. Current monthly rental payments to Diversified are to be made directly by Debtors.

Harrison, an unsecured creditor, objected to Debtors' Plan on grounds that the separate classification of unsecured debt due to Diversified constitutes unfair discrimination among classes of unsecured creditors in violation of § 1322(b) of the Bankruptcy Code. Harrison argues that 100% payment to Diversified would result in payment to general unsecured creditors' claims of only 10%, whereas equal pro rata distribution of the same cash flow among all unsecured creditors would result in each receiving 45% of each claim. Harrison argues, from the perspective of the unsecured creditors, that this discrimination is unfair.

Debtors argue that the separate classification is necessary for a successful Chapter 13 reorganization. It is undisputed that Debtors' current rent is significantly below the market rate, and they would have an extremely difficult, if not impossible, time se-

curing alternative housing. If they are unable to assume their lease with Diversified, Debtors argue that they will be evicted and face homelessness. Before Debtors can assume the lease, they must cure all rent arrearage. If they cannot assume the lease, Debtors apprehend that Diversified will terminate it and evict them. If that happens, they could not complete their Chapter 13 Plan.

This fear of Debtors is well founded. On December 3, 1996, Diversified moved to lift the automatic stay arguing that Debtors' lease was terminated and could not be assumed. On December 10, 1996, Diversified's motion was conditionally denied with the proviso that Debtors pay post-petition rent and also confirm a plan providing for full payment of all rent arrearage by March 11, 1997. Although Debtors' Plan has not yet been confirmed, Diversified has withheld action, apparently because the proposed Plan is favored by it.

### JURISDICTION

This matter is before the Court pursuant to 28 U.S.C. § 157 and is referred here by Local District Court Rule 2.33. Subject matter jurisdiction lies under 28 U.S.C. § 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

### DISCUSSION

■ The Bankruptcy Code specifically allows for different classes of unsecured debts in Chapter 13. Section 1322(b) provides that a plan may "designate a class or *classes of unsecured claims,* as provided in section 1122 of this title, but may not discriminate *unfairly* against any class so designated...." 11 U.S.C. § 1322(b)(1) (emphasis added). Some degree of discrimination must be lawful, "otherwise Congress wouldn't have modified the term [discriminate] with the word 'unfair.'" *In re Blackwell,* 5 B.R. 748, 751 (Bankr.W.D.Mich.1980). Thus, a Chapter 13 plan may discriminate, but not unfairly. *In re Eiland,* 170 B.R. 370, 374 (Bankr. N.D.Ill.1994) (citing *McCullough v. Brown,* 162 B.R. 506, 508–09 (N.D.Ill.1993)).

As Harrison argues, the Amended Plan provides 100% payment to one unsecured creditor while paying the other unsecured creditors only 10%. It clearly operates in favor of Diversified and discriminates against the general unsecured creditors. Therefore, the issue here is whether the Plan discriminates unfairly.

■ The burden as to whether the proposed discrimination is unfair rests with Debtors. *In re Liggins* 145 B.R. 227, 230 (Bankr.E.D.Va.1992) (citations omitted). At a minimum, Debtors must make some "evidentiary showing of the necessity to pay the [rent] claim in full so that [they] may continue to occupy this particular apartment. The critical question will be whether there is such necessity that justifies a mere token payment of other unsecured debt." *Id.* at 231. Moreover, the fairness of classification must be viewed from the perspective of creditors other than Diversified. *See Eiland,* 170 B.R. at 377; *McCullough,* 162 B.R. at 512.

■ There is no statutory standard for determining whether a plan discriminates "unfairly." *See In re Christopher,* 151 B.R. 475, 478 (Bankr.N.D.Ill.1993). Some courts have applied a four-part test for determining whether a discrimination is unfair:

(1) whether the discrimination has a reasonable basis;

(2) whether the debtor can carry out a plan without the discrimination;

(3) whether the discrimination is proposed in good faith; and

(4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.

*McCullough,* 162 B.R. at 509 (citing *In re Leser,* 939 F.2d 669, 672 (8th Cir.1991)). However, this test has been criticized as of late, viewing it as "amorphous," "abstract," "illogical," and "circular." *McCullough,* 162 B.R. at 509–12.

[5] A recent trend, favored by several judges, is to look at fairness from the creditor's perspective. *Eiland,* 170 B.R. at 378; *McCullough,*[1] 162 B.R. at 512 (citing *In re*

---

1. District Judge Shadur in *McCullough* recommended a "correlative benefit" test wherein a discriminatory plan will only survive scrutiny where the debtor places "something material onto the scales to show a correlative benefit to the other unsecured creditors." *McCullough,* 162 B.R. at 517–18.

*Smalberger,* 157 B.R. 472, 475 (Bankr.D.Or. 1993), *aff'd,* 170 B.R. 707 (D.Or.1994); *In re Scheiber,* 129 B.R. 604, 606 (Bankr.D.Minn. 1991)); *see also In re Strausser,* 206 B.R. 58, 60 (Bankr.W.D.N.Y.1997) (applying five-part test, the fifth element of which is fairness from the creditor's perspective). However, any analysis of whether a Chapter 13 plan discriminates unfairly must be fact driven. *Eiland,* 170 B.R. at 378. Each plan must be determined on its own merits. *Blackwell,* 5 B.R. at 751 (discriminatory plan denied because was not in good faith). "Perhaps, for example, lack of substantial harm to creditors may be shown, so benefit need not be demonstrated to show fairness. Or other circumstances may be seen to substitute for 'correlative benefit' as a test of fairness to creditors ... A fact-driven analysis is required." *Id.*

Likewise, because of a debtor's financial and family situation and the availability of other housing, it may be necessary to make a special provision for past due rent. Such classifications may not be unfair to other unsecured creditors because if they are not permitted the debtor may be forced to file under Chapter 7 and they may receive nothing. Therefore, the classifications are not ipso facto unfair discrimination.

*In re Kovich,* 4 B.R. 403, 407 (Bankr. W.D.Mich.1980).

■ Debtors argue that their plan is fair even from the creditor's point of view. Because of the lack of other housing at the below-market rate that Debtors currently pay, they must assume their lease or else it will be deemed rejected. 11 U.S.C. §§ 365(b)(1); 1322(b)(7); *In re Riggel,* 142 B.R. 199, 205 (Bankr.S.D.Ohio 1992). Debtors will find it difficult, if not impossible, to complete their Chapter 13 plan without a roof over their heads or with more expensive monthly rental payments.

Harrison argues that Debtors' fears are unfounded. He argues that evicting Debtors would run counter to Diversified's interest; thus, it would not happen. Creditor's Reply at 1–2. Moreover, he argues that a nondiscriminatory plan would result in a discharge of any remaining rent arrearage. Thus, he says the arrearage would not be a basis for eviction.

Harrison's argument is speculative optimism at best. It overlooks the effect of Debtors' inability to assume their lease. As stated, Debtors cannot assume their residential lease without curing the rent arrearage. If they cannot assume, the lease will be deemed rejected. Rejection constitutes a pre-petition breach of the lease. 11 U.S.C. § 365(g). Harrison argues that eviction would be of no economic benefit to Diversified. Diversified, however, already moved to modify the automatic stay to proceed with Debtors' eviction. Moreover, the order entered on that motion on December 10, 1996, permits Diversified to terminate the lease should Debtors fail to confirm a plan which provides for full payment to Diversified. Loss of the apartment is a virtual certainty if Debtors' Amended Plan fails.

Harrison's main argument is that the Plan unfairly discriminates against the general unsecured creditors because a nondiscriminatory plan would provide for a higher percentage to the general unsecured creditors. Harrison's argument is understandable, but it runs counter to what the Bankruptcy Code permits. If any plan discriminated unfairly simply because one unsecured creditor was paid more than another, the "discriminates unfairly" language of § 1322(b)(1) would be meaningless. A certain amount of disparity of treatment among unsecured creditors in a Chapter 13 plan is permitted. *Blackwell,* 5 B.R. at 751; *Eiland,* 170 B.R. at 374; *McCullough,* 162 B.R. at 508–09.

Debtors here have demonstrated their urgent necessity for full payment of the rental arrearage in order to save their home and have some cash flow to pay even the 10% to general unsecured creditors. While this treatment is certainly discriminatory, Debtors have shown that the discrimination is fair, even from the creditor's point of view. If the Amended Plan fails, those creditors will likely receive nothing, as all of Debtors' available income will go to pay higher rent. They will not get the 45% dividend that Harrison projects. In this case, the 10% dividend offered is worth more to creditors than a speculative 45% dividend.

## CONCLUSION

For reasons stated above and by separate order, the objection of the creditor Mark Harrison is overruled.